A. G. EDWARDS BROKERAGE COMPANY v. STEVENSON, Appellant.

### Division Two, March 12, 1901.

1. **Contract:** BUYING STOCK IN NEW YORK: COMMON LAW GOVERNS: OPTION DEAL. Where a Missouri brokerage company, being instructed in Missouri to buy stock for defendant, and not being restricted to any particular market, purchased and paid for said stock in New York, no money having been paid by defendant, the contract between the brokerage company and defendant was a New York contract, and in the absence of any showing to the contrary the presumption is that the common law prevails in New York, and not that the statutes of that State are the same as those of Missouri. Hence, in such case, the rights of the parties must be adjudicated, not in accordance with the statutes of this State making purchases upon margins gambling contracts and void, but in accordance with the principles of the common law.

2. ————: OPTION DEAL: KNOWLEDGE OF ONE PARTY: COMMON LAW RULE: JURY QUESTION. At common law a contract which, upon its face, appears to be legitimate, can not be declared void as a wagering contract, upon proof that one of the parties thereto knew and meant it to be such. In order that a contract for the purchase of stocks may be held void as a gambling contract, it must be shown that both parties thereto knew and understood that the stocks were purchased for one of them upon margins, or upon the rise or fall of the price of the stocks in the market. And whether or not the broker who purchased the stocks for the other party knew the other's intention to purchase the stocks on margins, is, where the evidence is conflicting, a question of fact for the jury, or the court sitting as a jury.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*Lyne S. Metcalf, Jr.,* and *Chester H. Krum* for appellant; *John D. Lawson* of counsel.

(1) At common law and in the absence of statute, a broker who is privy to a wagering contract is *particeps criminis,* and can not recover for services rendered or losses incurred therein. This is upon the theory that the broker is not an agent, as there can be no agency in the perpetration of a crime or a misdemeanor. Ream v. Hamilton, 15 Mo. App. 577; Crawford v. Spencer, 92 Mo. 498; Irwin v. Williar, 110 U. S. 499; Embrey v. Jamison, 131 U. S. 336; Pope v. Hanke, 40 N. E. 839; Jamison v. Wallace, 47 N. E. 762. (2) A broker who, contracting in his own name, makes advances for his principal and aids him in a gambling transaction, with notice of the unlawful intent of the latter, and of the real character of the transaction, can not recover his commissions and advances, whether he actually makes a legal contract or

not. If he makes a legal contract he exceeds his power, and can not recover. If he does not, the contract itself is illegal and void, and for that reason the broker can not recover. Mohr v. Miesen (Minn.), 49 N. W. 862; Phelps v. Holderness (Ark.), 19 S. W. 921; Dows v. Glaspell (N. D.), 60 N. W. 60; Fareira v. Gabell, 89 Pa. St. 89; Embrey v. Jamison, 131 U. S. 336. (3) The mere order or agreement of appellant with respondent to buy the shares of stock, without any intention on the part of appellant of receiving or paying for same if purchased by respondent, and with the intention not to actually receive and pay for the full amount of the stocks so purchased, but only to settle differences in price, is a gambling transaction, unlawful and prohibited, and is absolutely void, whether the respondent knew of his intention or not. R. S. 1889, secs. 3931, 3932, 3936; Connor v. Black, 119 Mo. 126. (4) The respondent, a broker, can not, in such case, recover his commissions or money paid to settle losses, even though he believed that the appellant intended an actual purchase and delivery. Connor v. Black, 119 Mo. 126; s. c., 132 Mo. 150. (5) All of the instructions given by the court were erroneous, as there was no evidence on which to base them. There was absolutely no evidence that the appellant requested that the stocks be bought for him in New York. The purchase in New York was the undertaking of the respondent, and of it alone.

*Albert N. Edwards* for respondent; *Geo. L. Edwards* of counsel.

(1) The purchases authorized by appellant to be made in New York for him were there made. At common law these purchases were legal even though appellant intended to gamble. Connor v. Black, 119 Mo. 126, 132 Mo. 150; Cockrell v. Thompson, 85 Mo. 510. (2) The statute pleaded by

appellant has no extra-territorial effect. Connel v. Western Union Tel. Co., 108 Mo. 459; State v. Gritzner, 134 Mo. 512. And, having no application to, or effect upon, the purchases made in New York, the common-law rule upholding their validity prevails. Morrissey v. Ferry, 47 Mo. 521; Said v. Stormberg, 55 Mo. App. 438. (3) The employment of a broker to buy shares operates as a request to make payment for the same and the law implies a promise on the part of the principal to repay to the broker his advances. Perrin v. Parker, 126 Ill. 207. (4) The statute pleaded offers no defense to this action. (a) Because, even though appellant intended to violate it, he did not do so, as the purchases he made in New York are not prohibited by it. (b) Even though appellant both intended to violate it and had violated it and respondent knew of his intent, respondent is entitled to recover in this action. The statute imposes a penalty only upon those who buy or sell or offer to do so without any intention of actually receiving or delivering and those who communicate or receive such an offer with a view to a transaction in violation of the statute (a purchase in New York is not such a transaction). The statute does not prevent a recovery by those upon whom it imposes no penalty. Howell v. Stewart, 54 Mo. 400; State v. Gritzner, 134 Mo. 512. (5) While the Constitution confers no license to gamble, the purchases made by appellant in New York were valid contracts made in a lawful manner, none of the incidents of which could the Legislature constitutionally abrogate. State v. Gritzner, 134 Mo. 512; State v. Julow, 129 Mo. 172. (6) At common law a broker could recover though his principal intended to gamble. The public policy of the State as to this is changed by the statute only to the extent that the statute expressly provides. Theobald v. Supreme Lodge, 59 Mo. App. 87. And in all cases not governed by the statute, the broker may recover. (7) And even where

a statute applies, it is the policy of this State to permit all those persons not designated as subject to its penalties to recover. Howell v. Stewart, 54 Mo. 400; State v. Gritzner, 134 Mo. 512. (8) Before he can plead that his contract is contrary to public policy, a defendant must restore what he has received. Wiggins Ferry Co. v. Railroad, 73 Mo. 411. (9) Public policy forbids the enforcement of an illegal contract only when it is sought to be enforced by a guilty party and when both parties are *in pari delicto.* Holman v. Johnson, 1 Cowp. 341.

BURGESS, J.—The purpose of this action is to recover of defendant a sum of money aggregating, including interest, and commissions as broker, the sum of $7,360.87, alleged to be due plaintiff on account of services rendered by it, and moneys advanced by it, for defendant, at his instance and request, in the purchase of Linseed Oil stock, and Atchison, Topeka & Santa Fe preferred stock. Plaintiff had judgment for the amount stated and after unsuccessful motion for a new trial defendant appeals to this court.

Plaintiff, a broker in the city of St. Louis, engaged in the business of buying and selling stocks and bonds in St. Louis and other markets, undertook to buy for defendant, Linseed Oil Company stock, and Atchison, Topeka & Santa Fe Railroad Company preferred stock. At the time defendant requested plaintiff to buy for him the Linseed Oil stock, nothing was said as to the price to be paid for it, or, the number of shares to be bought. With respect to the Atchison, Topeka & Santa Fe Railroad stock, plaintiff suggested to defendant that he purchase this stock, and thereupon defendant requested plaintiff to purchase two hundred shares of it for him. No direction was given at any time, as to where the stock should be purchased, and the result was that plaintiff purchased it in

the city of New York, through some broker there. The stocks were bought on account of plaintiff, and it was charged by the New York parties who bought it to plaintiff. Defendant was not known in the transaction. The certificates of stock were held by plaintiff, and they were carried by the New York parties for it for several months.

The certificates were never assigned to plaintiff, nor were they ever delivered to it, or tendered to defendant, but the New York parties carried them for plaintiff on "margins," and exacted from it securities or cash as a protection in case of decline in the value of the stock.

As soon as the purchases were made, and plaintiff was notified of them, plaintiff at once notified defendant and charged his account with the purchase price of the stocks, which plaintiff had paid in full to the New York brokers who advanced same. Defendant never made any objection to the reports of these purchases upon receiving them, nor did he make any to the statements of account rendered him, in which plaintiff charged him with the amounts paid for the stocks and credited him with the dividend paid on the Linseed Oil stock while defendant was the owner of it, but wrote on the backs of two of these papers the indorsements: "Mr. Edwards, Purchase 200 Atchison, August 21, 1895." and "A. G. Edwards & Sons, Purchase 100 'Linseed.'"

On August 28, 1895, immediately after the purchase of the Linseed Oil stock, defendant addressed to plaintiff a note which reads as follows: "Gentlemen:—Please sell my two hundred shares of Linseed at the market price at such date as I will be sure to get the dividend of $1 per share, which I believe was declared on the fifteenth of August."

Plaintiff credited defendant with this dividend. Defendant never at any time deposited with plaintiff any money to secure "margins" on these purchases, nor did he agree to do so.

Nor did he ever pay plaintiff anything on account therefor, although plaintiff demanded of him the purchase price.

Defendant testified that plaintiff was at liberty to purchase the stocks in New York.

Plaintiff called upon defendant to put up margins, and in one letter suggested that the market looks "nervous," and in another that it "has gone to pot," but nothing was put up, and thereupon, after notifying the defendant that plaintiff had rather carry the stocks than sell them, and the defendant having failed to make the demanded advances, the plaintiff sold the stocks at a loss.

Defendant testified that he had no intention of receiving the stock or of paying therefor and claims the transactions were simply deals on margins, speculations on the rise or fall of the market, and violations of the statutes relating to option dealing, and were therefore illegal and void.

There was no evidence that defendant told the plaintiff that he did not intend to receive and pay for the stocks. On the other hand, plaintiff's president testified that it did not intend to settle the transaction by settling on the difference in prices, and that plaintiff did not know that defendant did not intend to receive and pay for the stocks, nor that he intended to settle the transaction by paying the difference.

At the request of plaintiff, and over the objection and exception of defendant, the court declared the law to be as follows:

"The court declares the law to be, that if it appear from the evidence that defendant requested plaintiff as his agent to buy in New York City, N. Y., the Atchison and Linseed stocks, respectively specified in plaintiff's petition, and that pursuant to said request plaintiff bought in said city and State for defendant the stocks aforesaid, then the said purchases are not within the provisions of sections 3931 or 3932 of the Revised

Statutes of Missouri 1889, but are governed as to their legality and validity by the laws of the State of New York.

"The court declares the law to be that no evidence having been offered as to the laws of the State of New York, it is presumed that the law of the State of New York is the same as the common law of the State of Missouri; there is no presumption that the statutory law of the State of New York is the same as the statutory law of the State of Missouri.

"If it appear from the evidence that defendant authorized plaintiff to buy for him in the city of New York 200 shares of the stock of the Linseed Oil Company, and 200 shares of preferred stock of the Atchison, Topeka & Santa Fe Railway Company, and plaintiff in the State of New York, did so, and paid the purchase price of said stocks, then the court declares the law to be that plaintiff is entitled to recover the money paid by it upon said purchases, although it appear from the evidence that defendant never intended to actually receive or pay for any of said stocks, unless the court further finds that the sellers of said stock, as also the plaintiff, at the time the purchases were made, understood that no shares of stock were to be delivered, but that the transactions were only to be settled by the payment or receipt of the difference in the market price, and the burden of proving this is on the defendant.

"If the court finds from the evidence that the plaintiff, through its brokers in New York, made purchases of shares of stock in said city, at defendant's request, for and in behalf of defendant, in order to render such purchases void as wagering or gambling contracts, it is necessary that it should have been the intention of both the seller and the purchaser at the time the purchases were made, that no shares of stock should be delivered or received, but that the transaction should be settled by paying or receiving the difference in the market

price.   If such was not the intention of both seller and pur-
chaser at the time the purchases were made, then the finding
of the court upon the defense that the transaction was a wager-
ing contract should be for the plaintiff, and the burden of
proving that both parties intended that no shares of stock should
be delivered at the time the purchases were made, but that the
transaction should be settled by paying or receiving the differ-
ence in the market price, is on the defendant.

"If the court finds from the evidence that the defendant
requested the plaintiff to buy, and that plaintiff did buy the
shares of stock for defendant, it is not enough to defeat plain-
tiff's recovery in this case that defendant did not intend to
receive or pay for any shares of stock.   It must be shown by
the preponderance of evidence that both defendant and the
parties from whom plaintiff purchased said shares of stock
intended there should be no delivery and that plaintiff so
understood the matter at the time.   In other words, it must
appear from the evidence that the seller and the purchaser and
the plaintiff understood it was to be a gambling speculation
to be settled only by the payment of difference in the market
price and that no shares of stock were expected to be de-
livered."

Defendant asked the following declarations of law which
were refused and he duly excepted.

"Upon all of the evidence adduced, the court, sitting as a
jury, will find for defendant.

"If the court, sitting as a jury, find from the evidence
that the dealings between plaintiff and defendant were upon
margins and contemplated upon the part of the defendant, not
the receipt of and payment for the stocks bought, but an ad-
justment of differences on the basis of the future market, then
the plaintiff is not entitled to recover, and the court will find
for the defendant.

"If the court, sitting as a jury, finds from the evidence that it was not the intention of the defendant to receive and pay for the shares of stock ordered by him through plaintiff as a broker, but that his intention was to settle the differences between the market price of such stocks when bought and those when sold at some subsequent time, then the finding should be for the defendant.

"If the court, sitting as a jury, find from the evidence that it was not the intention of the defendant to receive and pay for the shares of stock ordered by him through plaintiff as a broker, but that his intention was to settle the difference between the market price of such stocks when bought and those when sold at some subsequent time, and if the court, sitting as a jury, further finds that such intention was at the time of such order communicated or known to plaintiff, or was shared in by plaintiff, then the finding should be for the defendant.

"If the court, sitting as a jury, find from the evidence that the defendant, in the city of St. Louis, and State of Missouri, gave to plaintiff, a broker in said city, an order to purchase for him certain shares of stock known as Linseed Oil Company stock and Atchison, Topeka & Santa Fe Railroad Company stock, and that the intention of both plaintiff and defendant was to buy said stocks upon margins, and that no delivery of or payment for said stocks was contemplated by plaintiff and defendant, but the intention of both parties was that defendant should speculate on the difference in the market price of such stocks when bought, and this, when sold some subsequent time, then the plaintiff is not entitled to recover his commissions or money paid on account of such purchases, and the finding should be for the defendant."

The position of the defendant is that the transactions were nothing more nor less than deals on margins, speculations on the rise or fall of the market; that he had no intention of receiving or paying for the stock, and under such circum-

stances the transactions were in violation of the statutes of this State in regard to option dealing, and therefore illegal and void.

Assuming then that the defendant did not intend to receive the stock, is the plaintiff, if ignorant of such intention, entitled to recover; and even if it was aware of defendant's intention, is it entitled to recover?

The sections of the statute (Revised Statutes, 1889), upon which defendant relies, read as follows:

"Section 3931. All purchases and sales or pretended purchases and sales, or contracts and agreements for the purchase and sale, of the shares of stocks or bonds of any corporation, or petroleum, provisions, cotton, grain or agricultural products whatever, either on margin or otherwise, without any intention of receiving and paying for the property so bought, or of delivering the property so sold, and all the buying or selling or pretended buying or selling of such property on margins or on optional delivery, when the party selling the same, or offering to sell the same, does not intend to have the full amount of the property on hand or under his control to deliver upon such sale, or when the party buying any of such property or offering to buy the same does not intend actually to receive the full amount of the same if purchased, are hereby declared to be gambling and unlawful, and the same are hereby prohibited. Any company, co-partnership or corporation, or member, officer or agent thereof, or any person found guilty of a violation of the provisions of this section, shall be fined in a sum not less than three hundred dollars nor more than three thousand dollars.

"Section 3932. It shall not be necessary in order to commit the offense defined in the preceding section, that both the buyer and seller shall agree to do any of the acts above prohibited, but the said offense shall be complete against any

corporation, association, co-partnership or person thus pretending or offering to sell, or thus pretending or offering to buy, whether offer to sell or buy is accepted or not; and any corporation, association, co-partnership or person, or agent thereof, who shall communicate, receive, exhibit or display in any manner any such offer to buy or sell, or any statements or quotations of the prices of any such property with a view to any such transaction as aforesaid, shall for each such offense, be deemed and held to be an accessory thereto, and upon conviction thereof, shall be fined the same as the principal; and any such corporation, association, co-partnership or person or agent permitting any such communication, reception, exhibit or display, shall, for every such offense, be fined a sum not less than three hundred dollars nor more than two thousand dollars.

"Section 3936. All contracts made in violation of this article shall be considered gambling contracts, and shall be void."

The question then is, do the facts disclosed by the record bring this case within the provisions of the statute? If so, it is clear that the plaintiff can not recover, because the evidence showed that defendant intended that the purchases were to be upon margins, or upon the rise or fall of the stocks in the market, and that he never at any time intended to receive the stock, which is by express provision of the statute declared to be a gambling contract and void, and it makes no difference that plaintiff and the parties from whom it purchased the stock for defendant, may not have been aware at the time of such purchase of his intention not to take the stock. [Connor v. Black, 119 Mo. 126; Connor v. Black, 132 Mo. 150.] Nor under such circumstances could plaintiff recover from defendant its advances to him, or commissions for buying the stock.

But plaintiff, in its purchase of the stock, was not re-

stricted to any particular market, and having purchased and paid for it in the city of New York, it was to all intents and purposes a contract of that State, and in the absence of any showing to the contrary the presumption must be indulged that the common law prevails in that State. [State v. Clay, 100 Mo. 571; Meyer v. McCabe, 73 Mo. 236; Benne v. Schnecko, 100 Mo. 250; Wooden v. Railroad, 126 N. Y. 10; Burdict v. Mo. Pac. Ry. Co., 123 Mo. 221; State v. Gritzner, 134 Mo. 513.] . The rights of the parties must, therefore, be adjudicated in accordance with the principles of the common law. At common law a contract, which upon its face appears to be legitimate, can not be declared void as a wagering contract upon proof that *one* only of the parties thereto knew and meant it to be such. Therefore, the arrangements for the purchase of the stocks in question, being legitimate upon its face, can not be held void as a gambling contract in the absence of proof that both parties knew and understood that they were purchased for defendant upon margins, or upon the rise or fall of the stocks in the market. [Crawford v. Spencer, 92 Mo. 498; Irwin v. Williar, 110 U. S. 499.]

With respect to the knowledge of plaintiff as to the intention and purpose of defendant in the purchase of the stock, whether upon margins or upon the rise or fall of the market, without any intention of receiving it or not, the evidence was somewhat conflicting, but its weight was for the consideration of the court. And the court having found that if any such intention existed on the part of defendant plaintiff was not aware of it, we are not inclined to interfere.

As the declarations of law given at the instance of plaintiff correctly presented this theory of the case, no error was committed in giving them, and as the declarations of law asked by defendant were upon a different theory they were correctly refused.

It follows that the judgment should be affirmed. It is so ordered. *Sherwood, P. J.,* and *Gantt, J.,* concur.