SAMUEL A. GAYLORD et al., Respondents, v. HANNAH DURYEA, Appellant.

St. Louis Court of Appeals, July 22, 1902.

1. **Brokers: STOCK SALES: FOREIGN CONTRACT.** In a suit by brokers for commissions on sales of stock made in New York by plaintiff's correspondents in that State, the sales are New York contracts, and in respect to their legality are governed by the laws of New York.

2. ———: ———: ———: PRESUMPTIONS. In a suit by brokers for commissions on sales of stock made in New York, in the absence of evidence as to New York statutes as to such transactions, it will be presumed the common law is in force there.

3. **Contract: COMMON LAW: WAGERING CONTRACT.** At the common law a contract can not be declared void as a wagering contract on proof that only one of the parties thereto meant it to be such.

Appeal from St. Louis County Circuit Court.—*Hon. John W. Booth,* Judge.

AFFIRMED.

*William F. Broadhead* for appellant.

(1) The losses which plaintiffs sustained, as shown in exhibit A, were losses on speculations in stock trans-

actions in which neither defendant nor any of the parties actually bought or sold in good faith, nor intended to buy or sell in good faith, any stock; there was no actual bona fide delivery, nor any intended by the parties, or any of them; they were wagering and gambling transactions, in violation of the statute, for commissions and losses, in which there can be no recovery. R. S. 1889, secs. 3931, 3932, 3936; Connor v. Black, 119 Mo. 126, reaffirmed 132 Mo. 150. (2) The defendant not having sanctioned or taken part in the illegal transactions in stock, and plaintiffs having, on May 12, 1898, sold and converted to their own use, the Carthage bond, and the Linseed Oil Stock, was entitled to judgment on her counterclaim against the plaintiffs for their value, $1,962.50. (3) Even if such agency has been so proven, to buy and sell stocks on the New York Stock Exchange, the intention of all the parties was simply to speculate on the rise and fall of stocks, as plaintiffs well knew. Loeffel v. Hoss, 11 Mo. App. 133; Beck v. Hass, 31 Mo. App. 183; Phillips v. Mahan, 52 Mo. 197; Gardner v. Early, 78 Mo. App. 350.

*John H. Overall* for respondents.

(1) The answer averred that they were gaming transactions, in that neither the respondents nor the appellant ever intended to receive or deliver any shares of stock by reason of such purchases or sales, thus seeking to bring the transactions within the rule of invalidity independently of the "option" statutes of Missouri. This contention will not avail the appellant, either in view of the statutes to which appellant's counsel refer in their brief, or under the broader rule based upon mutual intention to merely settle upon the basis of market differences. (2) As to the statutes, it need only be said that they do not apply because contracts in regard to the stocks were New York contracts, and the law of New York was not shown. The common

law, therefore, obtained, and at common law it was not enough for one party to intend to not deliver or receive (as is provided in the Missouri statute), but both must concur in the intention. Hence, the transactions are valid. Edwards Brokerage Company v. Stevenson, 160 Mo. 516. (3) As to the broader rule, it need only be said that the stipulation set out in appellant's abstract, recites that the purchases and sales were made on the floor of the New York Stock Exchange and were received and delivered in compliance with the rules and practice of such exchange— that is, that "when purchases were made such stocks and bonds were received and paid for" and "where sales were made such stocks and bonds are delivered to the purchaser thereof."

GOODE, J.—Samuel A. Gaylord and John H. Blessing were partners under the firm name of Gaylord, Blessing & Company, engaged in buying and selling stocks, bonds, grains and other articles as brokers in the city of St. Louis in the year 1891 and thereafter during the transactions involved in this action, which was instituted to recover from the defendant a balance alleged to be owing by her to the plaintiffs on account of commissions for the purchase of stocks in which they acted as her agents at sundry dates between the twenty-first day of September, 1891, and the thirty-first day of May, 1893. The original petition was filed on the twelfth day of May, 1898, the appellant states; but it is not contained in the abstract of the record on which the case was submitted for decision, nor is there any disclosure of its contents. The cause went to trial on an amended petition with two counts, which was filed the fifteenth day of March, 1900. The first count declares on an account stated, alleged to have been rendered by the plaintiffs and agreed to by the defendant on or about the thirty-first day of May,

1893, and to have shown a balance due to plaintiffs for various transactions in stocks and one in grain of $3,479.08. The second count is based on an open account of many items, the deals extending over about two years but with several credits entered in favor of the defendant down to the twenty-first day of April, 1898.

Affairs between the parties opened in September, 1891, when Mrs. Duryea and one Al. Wagenman appeared at plaintiffs' office and engaged their services as brokers. There is a conflict of testimony as to the authority conferred on the plaintiffs as Mrs. Duryea's agents and the scope of the contemplated transactions. Blessing's testimony was that on her first visit to their office she told him she wished them to act as her agents in buying and selling stocks and that they should take directions from Mr. Wagenman and obey his orders as to investments. She testified, on the other hand, that she did not intend to make any deals on her own account but only to give Wagenman a credit so that he might speculate and thereby get a capital to do business on, and that for that purpose she deposited with the plaintiffs one hundred shares of Granite Mountain stock as collateral to indemnify them for advances of money they might make for Wagenman in the transaction he contemplated; that Blessing was so informed and thoroughly understood her relation to the proposed deal, which was to be restricted to the purchase of two hundred shares of the Chicago, Burlington and Quincy Railroad Company's stock.

The Granite Mountain collateral deposited by her was subsequently surrendered at her request and shares of stock of the National Linseed Oil Company and one Carthage Light & Fuel Company bond substituted therefor. Various transactions occurred prior to the thirty-first day of May, 1892, being conducted

by the plaintiffs as agents of Mrs Duryea and charged on her account with them in obedience to orders given by Wagenman. As to what occurred on and prior to the last-mentioned date the testimony is again conflicting, but it is certain that Wagenman's previous authority, whatever its scope, was then revoked. His deals up to that time had resulted in a loss of some sixteen hundred dollars and she was notified by the plaintiffs that her collateral stood pledged to make good that loss. Blessing swore the defendant then told him that thereafter she would conduct her operations herself, while she swore that she disclaimed any liability for the sixteen hundred dollars which stood charged to her on plaintiffs' books on account of Wagenmans' operations, but was finally induced to let her collateral remain with the plaintiffs awhile on Blessing's promise that if she would do so, he would see that she got it back without being out anything and would make her some money besides. Thereafter sundry deals were made which the testimony for the plaintiffs tends to prove she ordered in person, while she denied that she had any knowledge of them. It is admitted that in February, 1893, she took up the Granite Mountain collateral and deposited other in lieu of it and that she was notified regularly by mail of the various transactions made in her name and also of the state of her account with plaintiffs from month to month, but she says she failed to receive all of the twenty statements of account and the letters sent to her and did not read but six of the letters she did receive. Those she admitted reading related to purchases and sales of stocks made in her behalf by the plaintiffs. In April, 1898, plaintiffs notified defendant of the balance due them which had been standing unpaid since August, 1893, and that if it was not settled by the twelfth day of May, 1898, they would sell the collateral and it was admitted that the sale was there-

after regularly made and her account credited with the proceeds. This action was brought to recover the net balance. The defenses were that all the transactions were illegal and void as against public policy because they were but wagers made on the rise and fall of the market prices of stocks and grain without an intention that the articles bought or sold by the plaintiffs as brokers should be delivered, and that the cause of action stated in the second count of the petition was barred by the statute of limitations because the recent credits were unauthorized. A counterclaim for the value of the collaterals was also set up on the ground that plaintiffs had unlawfully converted them after demand had been made by the defendant for their return. There was a finding in favor of the defendant on the first count of the petition, and as to an item growing out of a deal in grain on the Chicago Board of Trade on the second count, but against her as to the deals in shares of stock; also on her counterclaim and as to the defense of the statute of limitations, judgment being entered against her on the second count for $1,211,24, from which she appealed.

As this case comes to us, it strikes us as easy of solution. It is an action at law and each side of the issues of fact having been supported by testimony, the finding of the circuit court thereon is conclusive. No points are made in regard to the admission or exclusion of evidence and our investigation must be confined to the correctness of the legal theories adopted by the trial court. But it is unnecessary to set out all the declarations of law which were given and refused, as they related to the effect of a purely speculative intention on the part of the defendant, and the purchases of stock were all made in New York City by the correspondents of the plaintiffs in obedience to telegraphic orders sent by the latter and therefore constituted New York contracts, to be governed by the laws of that State

in respect to their legality, and not by our statutes. Evidence was not introduced to show what the New York law as to such transactions is, and, hence, the validity of the contracts is to be tested by the common law on the presumption that it is in force in that State; and at common law the contracts were not void as wagers because the defendant meant to speculate merely, without making actual purchases or sales, unless that intention was shared in by the party with whom she dealt. Edwards Brokerage Co. v. Steveson, 160 Mo. 516.

Whatever may have been the intention of Mrs. Duryea or Wagenman in regard to speculating and making or accepting actual deliveries, there is no substantial evidence that the plaintiffs knew that deliveries were not intended, and in fact the undisputed evidence, supported by an admission of the defendant, is that deliveries were made in all instances. A stipulation signed by both parties was introduced and is of the following tenor: "If plaintiffs show that orders were given by plaintiffs to their agents, Kennett, Hopkins & Company, by telegrams, letters or otherwise, to buy or sell stocks or bonds in New York City, then it is admitted that the said agents will testify that such purchases and sales were made by them on the floor of the New York Stock Exchange, and the same received and delivered in compliance with the rules and practices of said exchange, to-wit: when purchases were made, such stocks and bonds were received and paid for by such agents; and where sales were made, such stocks and bonds were delivered by such agents to the purchasers thereof, and the admission that such agents will testify as above, shall be taken and considered as evidence in this case with like effect as if said agents were present and so testified."

That the orders for stocks were all placed by Kennett, Hopkins & Company is undisputed; nor was

there any evidence to rebut what it was admitted those agents would swear, namely: that deliveries accompanied every transaction. It follows that the allegation that the transactions were of a gambling nature was not made good.

The circuit court found against the defense of the statute of limitations which was interposed to the second count of the petition, and, as the original petition, which was filed in due time, has not been preserved in the record, we can not overrule that finding, for the count may have been pleaded therein exactly or substantially as it was in the second one.

The judgment is affirmed. *Bland, P. J.,* and *Barclay, J.,* concur.