MURMAN, Respondent, v. R'OSE, Appellant.

St. Louis Court of Appeals, June 4, 1908.

OPTION DEALING: Delivery of Stock Purchased. Where a person, desiring to purchase certain stocks, placed an order for them with a stock broker, expecting a delivery of the stock actually purchased, and the broker gave the purchaser a memorandum of the deal stating the terms and reciting that business was received with the understanding that the actual delivery of property bought should be made, except on an understanding where it was not to be delivered, and where the broker admitted that if the purchaser had demanded the shares he would have turned them over to him, he could not afterwards defeat an action brought by the purchaser for the profits on shares so bought and afterwards sold by him for the purchaser, although there never was any actual delivery to the purchaser, and the broker deceived the plaintiff about having the stock in his possession. Sections 2337 and 2338, Revised Statutes 1899, and decisions construing them do not apply to the case.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster,* Judge.

AFFIRMED.

*E. C. Slevin* for appellant.

(1) A pretended sale of stocks upon margins, with no intention of either delivering or receiving the stocks, is a gambling transaction and is unlawful; and such contracts are void. R. S. 1899, secs. 2337, 2338, 2342; R. S. 1896 (Ill.), secs. 253, 262, 263. (2) It is not essential to render such contracts void, that both parties

thereto should agree that the sale should be a fictitious one. It is sufficient if one of the parties so intended it to be. Connor v. Black, 119 Mo. 126; Connor v. Black, 132 Mo. 150; Brokerage Co. v. Stevenson, 160 Mo. 516; Stewart v. Hutchison, 120 Mo. App. 32.

*Lee Meriwether* for respondent.

GOODE, J.—The purpose of this action is to recover the sum of $4,800 alleged to be due plaintiff from defendant as part of the purchase price of two hundred shares of the second-preferred stock of the St. Louis & San Francisco Railroad Company. The defense stated in the answer is that it was understood and agreed between plaintiff and defendant the shares of stock should not be purchased by defendant, who was acting as plaintiff's agent in the transaction, and defendant did not purchase them; that it was agreed the purchase should merely be a pretense, with no intention on the part of plaintiff to pay for the shares and on the part of defendant to deliver the same, but that the contract should be a wager on the rise and fall of the market price of the stock. Defendant pleaded he learned on November 28th his dealings with plaintiff were illegal and so notified plaintiff and that defendant would withdraw from them. He swore he knew all along they were illegal. The facts out of which the case grew are these: defendant was a stockbroker in the city of St. Louis. He testified he conducted a bucket shop, but made actual sales and purchases, accompanied by deliveries of the shares when his customers preferred that mode of dealing. Charles F. Kelly, a friend of plaintiff, had purchased four hundred shares of the stock aforesaid, through the agency of defendant. The certificates for these shares had been delivered to defendant for Kelly but were retained in defendant's possession as security for part of the price he had advanced

for Kelly. Certain dividends had been collected by defendant and paid to Kelly on this stock while it was in the former's possession. On July 7, 1904, Kelly directed plaintiff to go to Rose's office and have him dispose of the four hundred shares at the market price on said date. Plaintiff concluded to buy two hundred of the shares himself and it was agreed that number (one-half of them) should be transferred from Kelly's name to plaintiff's. When plaintiff told defendant of this arrangement the latter said he had already sold all Kelly's shares and could not transfer them to plaintiff. Thereupon plaintiff ordered defendant to buy two hundred shares in the market. Plaintiff made two visits to defendant's office. He gave the order to purchase two hundred shares for his account during the first visit. On the next visit defendant said he had purchased the shares for plaintiff and had them in his possession; whereupon plaintiff paid $600 on the price. This money was paid by defendant retaining $600 of the sum he owed Kelly for the four hundred shares sold for the latter's account, the arrangement being satisfactory to Kelly. On the occasion of the second visit and as evidence of the purchase of the shares for plaintiff, defendant gave him this writing on a card:

"We solicit and will receive no business except with the understanding that the actual delivery of property bought and sold upon orders is in all cases contemplated and understood, and we reserve the right to close all transactions without further notice when margin is about exhausted. Memorandum. No. (blank.) St. Louis, July 5, 1905. Bought from Central Stock and Grain Exchange of Chicago for account of Henry Murman, 200 'S. S. F.', at 46; commissions 316; $600; margin open; interest three per cent.
                    "(Signed) HUGH C. ROSE, Broker.
      "Errors and omissions excepted."

On November 28th the price of the stock was much higher and plaintiff ordered his shares sold. Defendant afterwards told him he had sold the stock at the market price then current, at which the total price would amount to $13,600. Plaintiff owed $8,200 on the shares which left a balance due plaintiff in defendant's hands of $5,400. Though defendant, or his clerk, promised to send a check for the balance to plaintiff's office, this was not done, but instead a check for $600 was sent, defendant assigning losses in his business which compelled him to make some kind of a settlement with his creditors, as a reason for not paying the remainder.

In defense of the action sections 2337 and 2338 of the Revised Statutes of 1899, and decisions of the Supreme Court construing said sections, are invoked. [Conner v. Black, 119 Mo. 126, 132 Mo. 150, 33 S. W. 783; Edwards Brokerage Co. v. Stevenson, 160 Mo. 516, 61 S. W. 617.] The defense pleaded is that neither plaintiff nor defendant expected or intended when the order to buy the stock was given, there should be an actual purchase and delivery of it, but intended to gamble on the fluctuations of its market value. The uncontradicted testimony refutes this defense. There is not a trace of evidence to indicate plaintiff did not contemplate delivery of the shares. All the evidence goes to show he not only expected a delivery, but believed the shares had been purchased by defendant, were in the latter's possession and held by him as security for the balance of the price which, as yet, plaintiff had not paid. The memorandum of the deal which defendant executed and delivered to plaintiff, recited the stock had been bought for plaintiff's account and declared defendant would receive no business except on an understanding the property was to be delivered. Moreover, he told plaintiff, according to the latter's testimony, the shares had been purchased and were in his possession. Both parties swore the original proposition was to trans-

fer part of Kelly's shares, which defendant admits he had actually bought and held, to plaintiff.    In other words, the transaction in which plaintiff wished to engage and for which he gave an order to defendant as broker, was one like the Kelly transaction, wherein an actual and bona fide purchase of shares occurred and was accompanied by a present delivery.

But counsel for defendant insists that if he did not intend a genuine purchase and delivery of the shares at the time he received the order from plaintiff, it is immaterial that plaintiff did contemplate a transaction of that character, because, under the aforesaid statutes, as construed by the Supreme Court, if either party to the transaction intends there shall be no delivery of the property, the contract is invalid and no action on it will lie.    Defendant's own testimony defeats his defense.    He swore repeatedly that in transactions with customers the shares of stock were delivered whenever a customer desired that kind of a deal.    In other words, defendant, as broker, handled bucket shop deals pure and simple, in which no delivery was intended if his customers wished to engage in such a transaction, but when they asked for a genuine one, the shares were bought and delivered.    He admitted if plaintiff had demanded the shares at any time, they would have been turned over and that such was his (defendant's) purpose from the start.    It is not and will not be contended the contract was void if an actual delivery was contemplated from the first, merely because plaintiff did not pay the full price and demand the shares at the outset, but chose instead to leave them with defendant as collateral security for the unpaid purchase money.    Neither do we consider it material, if defendant deceived plaintiff about having the stock in possession.    The question is whether it was the intention of the parties the sale should be accompanied by a transfer of the purchased shares to plaintiff, so they would be the latter's prop-

erty and subject to his orders; intended an actual and not a colorable purchase. Defendant's testimony was that he regarded his deals as wagering transactions up to the time delivery was demanded, but after the customer asked for the shares he regarded the affair as an actual sale. In our opinion the testimony for plaintiff, all of which goes to show the latter thought he was making a bona fide purchase, and the testimony of defendant that from the first plaintiff could have obtained the shares from defendant by asking for them and paying the full price, take the case out of the statutes and decisions cited supra, and prove conclusively the judgment is for the right party. It is affirmed. *Bland, P. J.,* concurs; *Nortoni, J.,* not sitting.