## J. GARNETT ATWATER, Respondent, v. A. G. EDWARDS BROKERAGE COMPANY, Appellant.

St. Louis Court of Appeals, March 22, 1910.

1. **GAMBLING CONTRACTS: Purchase and Sale of Stocks and Bonds: Intent of One Party Only to Gamble.** Under sections 2337, 2338, and 2342, Revised Statutes 1899, the intent of either .one of the parties to a transaction to gamble in it or to speculate on the rise and fall of the market makes the contract void, notwithstanding the other party is innocent and wholly unaware of the intention of the other party to gamble.

2. ———: ———: **Brokers and Agents: Right to Recover Affected by Gaming Intent of Principal.** An agent or broker who conducts such transactions cannot recover for his services, though he has no knowledge of the unlawful intent of his principal, for the reason no enforceable rights can accrue under the unlawful contract; and if the broker knows of the unlawful inten- ·tion of the parties to the contract and brings them together for the purpose of consummating it, he cannot recover because he is *in pari delicto.*

3. ———: ———: **Intent of One Party Only to Gamble: Common Law Rule.** At common law, contracts for the purchase and sale of stocks and bonds are illegal as gambling transactions only when it appears that both parties intended to speculate on the rise and fall of the market.

4. ———: ———: ———: **Common Law Presumed to Obtain in Foreign State.** In the absence of evidence of the existence of a statute of a foreign state denouncing gambling contracts for the purchase and sale of stocks and bonds, the common law rule with respect thereto is presumed to obtain.

5. ———: ———: **Intent of One Party Only to Gamble: Contract Performed in Foreign State.** Contracts made by a broker, who was employed in this State for the purchase and sale of stocks and bonds in another state, are not void by reason of the intent of one of the parties thereto to gamble, unless made void by the laws of such other state.

6. ———: ———: ———: ———: **Rights of Brokers and Agents.** The contracts declared illegal by the statute are those for the purchase or sale of stocks, etc., and not those creating the re- lation of principal and agent between a party thereto and the broker; so that where the contracts of purchase and sale were

valid as made in another state, a broker employed in this State could recover his commissions, notwithstanding such contracts would be void, if made in this State.

7. **CONTRACTS: Laws of Other States: Public Policy.** The comity between states does not require courts of one state to enforce rights accruing under contracts valid by the laws of another state, if to do so would violate the public policy of the state of the forum as declared by statute.

8. **EVIDENCE: Admissions: Party Bound by Own Testimony.** In an action to recover money paid in settlement of an account in stock transactions, plaintiff is bound by his own testimony that the transactions were gambling transactions, so as to preclude a recovery by him.

9. ————: **Adverse Party not Bound by Opponent's Testimony.** In an action to recover money in settlement of stock transactions conducted by defendant as broker for plaintiff, where defendant counterclaimed, asking judgment for the amount of an assigned account growing out of stock transactions, evidence by plaintiff that he intended to gamble in the transactions out of which his claim as well as the counterclaim arose, while binding on him, was not conclusive on defendant, as the jury might disbelieve it and find for defendant on the theory plaintiff was misstating the facts to escape payment.

10. **GAMBLING: Purchase and Sale of Stocks and Bonds: Applying Proceeds of Gambling Contract to Payment of Valid Transactions.** The acceptance by a brokerage firm of a fund in the hands of another brokerage firm as a payment on a balance owing it by one of its customers for valid transactions, said fund being the fruits of a gambling transaction between said customer and the second brokerage firm, would not infect and destroy the validity of the indebtedness owing by said customer to said first brokerage firm, although it knew said payment was the fruits of a gambling transaction.

Appeal from St. Louis City Circuit Court.—*Hon. Chas. Claflin Allen,* Judge.

REVERSED AND REMANDED.

*George L. Edwards* for appellant.

(1) The appellant was entitled to recover upon its second counterclaim regardless of the fact, if such be a fact, that the consideration for the note which

forms the basis of this counterclaim, was an indebtedness resulting from the purchase and sale of shares of stock by the co-partnership for the respondent, which he did not intend to deliver or receive because such purchases and sales were made in the city of New York and State of New York, and appellant was entitled to show such fact and therefore not within the operation of sections 2337 and 2338 of our statutes, avoiding such purchases and sales because of an unlawful intent of one party. Brokerage Co. v. Stevenson, 160 Mo. 516; Gaylor v. Duryea, 95 Mo. App. 574. (2) The appellant was not concluded by what the respondent stated his intention to be in the course of his dealing with it and with the co-partnership. This was a status of mind which the appellant was entitled to have inquired into as any other question of fact. Knorpp v. Wagner, 195 Mo. 665.

*Thompson & Campbell* for respondent.

NORTONI, J.—This is a suit on an account for a balance alleged to be due plaintiff as a result of certain transactions conducted by the defendant as his agent in the matter of purchase and sales of stocks and bonds on the market. The defendant admitted the correctness of plaintiff's account, urged that it arose from gambling and interposed two separate counterclaims on which it prayed for a judgment against him. During the trial plaintiff testified that he did not intend to either receive or deliver the stocks or bonds purchased and sold on his account by the defendant, and at the conclusion of the case, the court dismissed not only the petition but the defendant's counterclaims as well. From this judgment, the defendant prosecutes the appeal.

It appears the defendant is an incorporated concern engaged in the brokerage business in the city of St. Louis. It appears, too, that A. G. Edwards & Sons,

a co-partnership, conducts a brokerage business in the
city of St. Louis in the same office occupied by the de-
fendant, A. G. Edwards & Sons Brokerage Company.
Defendant A. G. Edwards & Sons Brokerage Company,
conducts its brokerage business in St. Louis and deals
in local stocks, bonds, etc., whereas the A. G. Edwards
& Sons co-partnership deals and conducts its business
in buying and selling stocks on the stock exchange of
the city of New York. It seems that the several co-
partners of the firm of A. G. Edwards & Sons are al-
most, if not identical, with the several stockholders of
the defendant, A. G. Edwards & Sons Brokerage Com-
pany. Be that as it may, the two concerns are differ-
ent and distinct in that the corporation conducts its
business in this State and the co-partnership deals
in the New York Exchange. Although the two concerns,
the corporation and the co-partnership, maintain offices
at the same place and in the same rooms in the city of
St. Louis, they keep a separate and distinct set of
books and each conducts a separate and distinct busi-
ness. The business of buying and selling stocks and
bonds, conducted by the defendant brokerage company,
pertains to local stocks and bonds and the accounts
with reference to such transactions on its books are
known to the customers who deal with both as the local
account. The business conducted by the A. G. Edwards
& Sons co-partnership, in buying and selling stocks and
bonds on the New York Exchange, is kept by that
firm in their separate books and known to the cus-
tomers, who deal with both concerns, as the New York
account.

Several years before the institution of this suit,
the plaintiff, without knowledge of the fact that there
were two concerns doing business in the same office,
entered into a course of dealing with both by author-
izing them to buy and sell certain stocks and bonds on
the market for him. The plaintiff's account with both
concerns ran along several years and it seems that he

was occasionally furnished a statement thereof from each. Such local stocks and bonds as were bought and sold for the plaintiff's account were bought and sold for him by the defendant brokerage company and the accounts with reference thereto were carried in its books. So much of his transactions as pertained to the buying and selling of stocks and bonds in New York was conducted for him by the A. G. Edwards & Sons co-partnership and the accounts of those transactions were carried in the books of the co-partnership. While the plaintiff says he did not know at the time, as a matter of fact, that he was dealing on the market through the agency of two different concerns, it appears that he knew the business was being carried in two separate accounts, one known as the local and one as the New York account, and that he received some statements of account from A. G. Edwards & Sons Brokerage Company and some from A. G. Edwards & Sons. Finally, after the transactions by the different concerns on plaintiff's account had continued for several years, the plaintiff suspended further operations on the market and in effect revoked the agencies which theretofore obtained. At the time of suspending operations and revoking the agencies, the defendant brokerage company owed him as a balance on its accounts pertaining to such transactions as were had in local stocks and bonds, the sum of $4278.95. At the same time, plaintiff owed the A. G. Edwards & Sons co-partnership, for advances and commissions, a balance upon the New York account, pertaining to transactions conducted by it for him on the New York Exchange, of about $9500. Plaintiff was informed of the state of the two accounts, so he says, but was not informed as to the fact that one concern was a corporation and the other a co-partnership. As both the A. G. Edwards & Sons Brokerage Company and the A. G. Edwards & Sons co-partnership were controlled by the same individuals, the defendant corporation paid over

to the A. G. Edwards & Sons co-partnership the $4278.95 which it owed plaintiff; and the co-partnership credited plaintiff's account with it to that amount; that is to say, it reduced the balance of $9500 owed by the plaintiff on the New York account to that extent. The plaintiff knew the balance of $4278.95 owing to him on the local account was passed to his credit on the New York account, but it seems did not know that the two concerns were separate and distinct. He made no objection at the time to the amount stated being passed to his credit in the New York account, for, as he says, he thought he was dealing with one and the same concern and, of course, under those circumstances, it would have the right to make the credit whether he objected or not. Afterwards, the plaintiff executed his two promissory notes for the balance which he owed on the New York account, after having deducted the amount of the credit above referred to. The account of plaintiff's indebtedness to A. G. Edwards & Sons co-partners was thus closed by plaintiff's giving the two notes mentioned on September 30, 1903. Each of the notes, by their terms, became due on demand. One was for two thousand and some odd dollars and the second, that with which we are concerned in this case, for $3077.56. In a short time, the plaintiff paid the first, or $2000, note but with that matter we are not concerned. The second, or $3077.56, note remained unpaid and is involved here as will presently be further noted as a counterclaim, having been assigned by the co-partnership to the present defendant.

Several years after these transactions, the plaintiff discovered the fact that he had been dealing through the agency of two concerns instead of one as he theretofore supposed. After having discovered that he had been operating in local stocks through the defendant brokerage company and in New York stocks through the A. G. Edwards & Sons co-partnership, plaintiff instituted this suit against the A. G. Edwards & Sons

Brokerage Company for the balance of $4278.95 which it owed him at the time he suspended the agency. The theory of the case is that as the two were separate and distinct concerns, the brokerage company was without authority to apply the balance it owed plaintiff to his credit on the New York account, and it appears conclusively that plaintiff had not authorized the act.

Before the institution of the suit, plaintiff demanded payment of the amount from the defendant. His purpose having been thus revealed, the defendant procured an assignment from A. G. Edwards & Sons of so much of the account of the co-partnership against the plaintiff as it had supposed was theretofore paid by means of the credit referred to, that is so much of the account as continued to remain open, and an assignment as well of plaintiff's note for $3077.56, which remained unpaid. This suit being thereafter instituted for the balance of $4278.95, the defendant, in its answer, although not admitting that it intended to gamble, pleaded first that the plaintiff entertained such an intention at the time all the transactions were had through it. It alleged that at the time plaintiff claimed it became indebted to him in the sum of $4278.95, plaintiff intended by the purchase and sale in such stocks and bonds, through the defendant, to gamble in the rise and fall of the market price of said stocks and bonds. Because of the plaintiff's alleged intention in that behalf, the defendant invoked the provisions of sections 2337, 2338, Revised Statutes 1899, sections 2337, 2338, Ann. St. 1906, in bar and alleged that such transactions were therefore void and illegal under the provisions of section 2342, Revised Statutes 1899, section 2342, Ann. St. 1906. Further answering, in the third count, defendant set up as a counterclaim so much of the account of A. G. Edwards & Sons against the plaintiff which had theretofore been assigned to it, amounting to $4478.71 and prayed judgment thereon. There appears to be a discrepancy of about $200 in

the amount of this counterclaim and the plaintiff's original account. It may be explained however by reference to the items of interest, calculated on both, which appear and are included in the prayer for relief by both parties.

In the fourth count of its answer, the defendant asserted a counterclaim on the plaintiff's negotiable promissory note for $3077.56 and interest which had theretofore been assigned to defendant by the A. G. Edwards & Sons co-partnership. In the reply, the plaintiff pleaded that each of defendant's counterclaims was without consideration and void; that the account assigned to it by the A. G. Edwards & Sons co-partnership was infected with illegality on account of having accrued as a result of gambling transactions between the parties and that although he executed the note referred to, it was void and unenforceable for the same reason. There was no evidence introduced other than that on the part of the plaintiff. The plaintiff himself, besides testifying to the correctness of the accounts and other facts hereinbefore recited, stated positively and unequivocally that he never at any time, during the transactions, intended to either receive or deliver any of the stocks or bonds purchased by defendant or the A. G. Edwards & Sons co-partnership on his account. He said that in all of the transactions he intended only to gamble in the rise and fall of the market. At the conclusion of the plaintiff's case, the court dismissed his petition and refused to permit the defendant to either proceed to trial on its counterclaims or to withdraw the same and, therefore, dismissed both. The defendant insisted that although the plaintiff testified he intended to gamble that it did not and insisted as well that in so far as it was concerned, it had a right to the opinion of the jury as to whether or not the plaintiff himself so intended at the time the transactions were had. Furthermore the defendant insisted that although the plaintiff may have

intended to gamble, as he said, that such intention on his part would not preclude its right of recovery on the two counterclaims set up in the answer which accrued as a result of contracts made by the co-partnership, A. G. Edwards & Sons, for plaintiff in the State of New York and not within the influence of our statute. Notwithstanding these arguments, the court dismissed both of defendant's counterclaims on the theory, it seems, that all of the transactions were void as against the public policy of this State, declared in the statutes above referred to, and asserted, too, that even though those represented by the counterclaims were conducted elsewhere, the consideration for the counterclaims had become contaminated or infected with the illegal intention of the plaintiff to gamble through the act of the defendant in intermingling the accounts, as it were, by paying over the sum of $4278.95 owing to plaintiff by it in the first instance to the credit of his account with A. G. Edwards & Sons with respect to the New York transactions. There can be no doubt that under the law of this State, as declared by our Supreme Court, the defendant was entitled to either proceed to trial on or withdraw its counterclaims as it chose.

Our statutes, sections 2337, 2338, 2342, Revised Statutes 1899, denounce and level an inhibition against transactions of the character set forth in the plaintiff's testimony. Those statutes denounce all purchases or sales or pretended purchases or sales or contracts and agreements for the purchase and sale of stocks and bonds, etc., on margin or otherwise, without intention of receiving and paying for the property so bought or delivering the property so sold. All buying or selling or pretended buying or selling of such property on margin or on optional delivery when the party selling the same does not intend to deliver or when the party buying the same does not intend to receive the full amount thereof, if purchased, are declared to be gambling

transactions and unlawful. They are, therefore, prohibited. It is made a criminal offense, too, for parties to intentionally participate in such transactions. By section 2342, all contracts made in violation of the other sections cited are denounced as gambling contracts and void. In construing these statutes, our Supreme Court has declared and established the rule that the intent of either one of the parties to gamble in such transactions or to speculate on the rise and fall of the market, is sufficient to and does render the contracts absolutely void and of no effect, notwithstanding the other party may be ever so innocent and wholly unaware of the intention to gamble entertained by the other. The theory of the law declared by our Supreme Court in civil actions with respect to this is that each of the contracting parties is responsible for the intent of the other if it be an unlawful intent. And it seems the circumstances that the broker is merely an agent of the party entertaining the unlawful intent does not alleviate the rigor of the rule in the least in so far as he is concerned. In other words, the agent or broker conducting the operations, even though entirely innocent is precluded as well from his right of recovery by the unlawful intent of his principal. The doctrine in so far as an innocent broker is concerned is no doubt rested upon the proposition that the contract which he has negotiated between the parties being absolutely void in the first instance, no enforceable rights may accrue to anyone thereunder and, therefore, he must forego his advances and commissions. [Connor v. Black, 119 Mo. 126, 24 S. W. 184; Connor v. Black, 132 Mo. 150, 33 S. W. 783; Edwards Brokerage Co. v. Stevenson, 160 Mo. 516, 61 S. W. 617.] But if the broker is privy to the unlawful design of the parties and with knowledge of the intention of either brings them together for the purpose of entering into an illegal agreement, he is then, of course, *in pari delicto.* In such circumstances, the doctrine denying his re-

covery proceeds upon the theory and is rested upon that principle of the law which levels its condemnation in all cases against one who is *particeps criminis*. [Irwin v. Williar, 110 U. S. 499.]

In so far as the account sued upon by the plaintiff is concerned, it appears conclusively that each and every transaction therein indicated, which affords the balance of $4278.95, was conducted by the defendant for him as his agent or broker in this State. In such circumstances, they fall within the inhibition of the statutes and each and all of those transactions are shown conclusively to be void in so far as the plaintiff is concerned, for he is precluded by his own testimony to that effect and it appears, too, that he is precluded on that score by the allegations of his reply. He not only pleaded in his reply, but testified as well, that as to all those transactions he intended to gamble in the rise and fall of the market only. The court therefore very properly dismissed his petition, for he, at least, was precluded by his own testimony. But the same is not true with respect to the counterclaims on any theory of the case. It is true the defendant's answer pleaded that the plaintiff intended to gamble in all transactions had with it but no such averment is present touching the transactions conducted by A. G. Edwards & Sons in New York and represented by the counterclaims. The answer seems to have been so framed as to transactions had through this defendant because of the fact plaintiff had given testimony theretofore to the same effect. However, there is not a word to be found therein which indicates that either this defendant or A. G. Edwards & Sons intended to gamble. Defendant's theory, maintained throughout, is that both it and A. G. Edwards & Sons at all times acted in the utmost good faith without any knowledge of the plaintiff's intention to use either as instruments in illegal transactions. There was no testimony introduced on the part of the defendant and there is noth-

ing in the case indicating what its intention was nor what the intention of the co-partnership, A. G. Edwards & Sons, was with respect to such transactions as were conducted by it for plaintiff. However, the matter with respect to A. G. Edwards & Sons is immaterial here for those transactions were carried on in New York and not within the influence of our statute. It is to be observed that none of the items relied upon by the defendant in the counterclaims accrued on account of its agency. Those items represented by the counterclaims relate exclusively to the transactions had by the firm of A. G. Edwards & Sons in the New York Stock Exchange on the plaintiff's account and, therefore, something more than the mere intention of one party to gamble is essential to render such transactions obnoxious to the law. In other words, such transactions are not void at common law because of the unlawful intention of one party only. In the absence of a statute denouncing them, contracts of the character involved in these counterclaims are illegal as gambling transactions only when it appears that both parties intended to speculate in the rise and fall of the market. [Crawford v. Spencer et al., 92 Mo. 498, 4 S. W. 713; Gaylord v. Duryea, 95 Mo. App. 574, 69 S. W. 607; A. G. Edwards & Sons Brokerage Co. v. Stevenson, 160 Mo. 516, 61 S. W. 617.] It is certain that our statutes are without extra territorial force, and in the absence of their appearing in evidence a statute of New York denouncing such contracts, the presumption is the common law rule with respect thereto obtains in that jurisdiction. As stated, at common law, such contracts are not rendered illegal by the intent of one party only. [Edwards Brokerage Co. v. Stevenson, 160 Mo. 516, 61 S. W. 617; Gaylord v. Duryea, 95 Mo. App. 574, 69 S. W. 607.] It appearing that each of the defendant's counterclaims arise out of transactions or contracts conducted by the co-partnership, A. G. Edwards & Sons, on the New York Stock Exchange,

as agent for the plaintiff, they are enforceable in the courts of this State under the ruling of our Supreme Court squarely in point. See Edwards Brokerage Co. v. Stevenson, 160 Mo. 516, 61 S. W. 617.

The doctrine of that case is manifest that the contracts denounced as illegal by our statutes are the contracts by which stocks or bonds are purchased or sold and not that creating the relation of principal and agent between the parties. If the legality or illegality of the agent's advances for and commissions on the account of his principal were to be tested by the contract of agency out of which the transactions grew in the first instance, it would seem that even the matters set forth in the counterclaims before us would fall within the inhibition of our statute as both of the parties were residents of this State and the contract of agency entered into here. But our Supreme Court, in Edwards Brokerage Co. v. Stevenson, 160 Mo. 516, 61 S. W. 617, saw fit to omit to notice the question suggested and treated the suit by the agent against his principal for advances and commissions as though the validity of the subject-matter should be ascertained and determined by reference to the law of the state where the purchases and sales were actually made by the agent or by another agent at its instance and request. The doctrine of that case is, therefore, to be interpreted, notwithstanding the fact the agent's claim against his principal for advancements and commissions, as here, must essentially rest in the first instance on the contract of agency, the legality or illegality of the subject-matter for which the recovery is sought is to be determined by reference to the law of the state where the agent actually conducted purchases and sales on his principal's account and not by that of the state where the agency was created. It seems, too, the Supreme Court in that case applied the general rule and enforced the right on the principal that a contract valid by the laws of the state where made is to be enforced

in any other jurisdiction where it may come in question, without noticing the exception to the effect that the comity existing between sovereignties does not require the courts of one state to enforce rights accrued under contracts valid by the laws of another state if to do so is violative of the public policy of the *forum* as declared by the statute. [Lawson on Contracts (2 Ed.), sec. 341; Cyc. Law and Prac. 675, 676, 677, 678, 679, 680; Flagg v. Baldwin, 38 N. J. Eq. 219; Bartlett v. Colliers (Wis.), 85 N. W. 703; Bryan v. Brisbin, 26 Mo. 243.] See also Thurston v. Rosenfield, 42 Mo. 474; Kerwin & Co. v. Doran, 29 Mo. App. 397 and a highly instructive article by Judge Lawson, 54 Central Law Journal, 223.

However, under the Constitution, Edwards Brokerage Co. v. Stevenson, supra, is conclusive on this court and its doctrine rules this case identically as in Gaylord v. Duryea, supra. In this view, it is entirely clear that defendant is entitled to recover on the two counterclaims set up in the answer, unless it appears they were infected with illegality by reason of the intention of both parties to merely speculate in the rise and fall of the market. It is certain that the unlawful intention of the plaintiff only, as shown by the record before us, is not sufficient to defeat the defendant's right of recovery on the counterclaims accrued through transactions of the co-partnership of A. G. Edwards & Sons for him in New York.

Moreover, it may be said on this score that even if the intention of one party alone were sufficient to defeat the defendant's right of recovery on the counterclaims, it should have been accorded a hearing with respect to that matter so long as the intention of A. G. Edwards & Sons was not admitted to be unlawful. The defendant is certainly not conclusively bound by the expressed intention of the plaintiff only unless the jury finds the fact. Our Supreme Court has recently said

in the case of Knorpp v. Wagner, 195 Mo. 637, 665, 93 S. W. 961, "if a certain state of mind is in issue to allow a case to pass off on the mere *ipse dixit* of the person that his mind were thus and so would be for him to decide the case himself, and the court or jury would have nothing to do but to enter a verdict." While the plaintiff is concluded by his testimony that he intended to gamble, this, of course, does not conclude the defendant on that score in so far as the right to enforce its claim is concerned. If the case fell within our statute, it may be on full proof that the jury would decline to accept the plaintiff's version of the matter and give a verdict for the defendant on the theory that plaintiff was misstating the fact in order to escape payment.

It is to be remembered that there is nothing in the defendant's answer which may be construed into an admission that either it or its assignor, A. G. Edwards & Sons, intended to gamble in any of these transactions. The entire allegation therein touching this matter is that the plaintiff intended to gamble in such transactions as were conducted by defendant only. However, in view of the answer, it is entirely clear that had all the transactions occurred in this State then it would have been entirely proper for the court to dismiss the counterclaims as well as the petition, as under our statute, the intent of one party is sufficient to invalidate the whole transaction. Even though the defendant denied such intent on its part by pleading the same on the part of the plaintiff, it would have brought so much of its counterclaim arising out of transactions within this State, if any, within the inhibition of the statute because of its confessing the intent of the plaintiff in that respect.

As to the proposition that even though the matters evidenced by the counterclaims were valid under the laws of New York and therefore otherwise enforceable, they were infected with illegality because of

the fact that the defendant, A. G. Edwards & Sons Brokerage Company, paid to the co-partnership, A. G. Edwards & Sons, the $4278.95 owing by the Brokerage Company to plaintiff on an illegal contract and A. G. Edwards & Sons accepted such payment and credited the same on their account of about $9500 against plaintiff. We are unable to perceive how this transaction could infect with illegality the matter of the New York account if it were otherwise lawful. Although A. G. Edwards & Sons may have known that the $4278.95 it received from the Brokerage Company was the fruits of a gambling transaction and, therefore, tainted with illegality as between the plaintiff and the Brokerage Company, certainly such illegality between those parties would not infect and destroy the validity of the indebtedness owing by the plaintiff to his agent, A. G. Edwards & Sons, if such indebtedness is otherwise valid in accordance with views above expressed.

The judgment should be reversed and the cause remanded. It is so ordered. All concur.