## W. G. LANE, Respondent, v. LOGAN GRAIN CO. et al., Appellants.

**Kansas City Court of Appeals, March 7, 1904.**

SALES: Puts and Calls: Option Dealing: Gaming. A "put" con‑ tract set out in the opinion is considered in connection with certain evidence and held to be an option without an actual intent to deliver the grain mentioned, and, therefore, was mere gambling on the difference between the market and the con‑ tract prices, and is a stench in the nostrils of the statute.

Appeal from Jackson Circuit Court.—*Hon. James Gibson,* Judge.

REVERSED.

*I. P. Ryland* and *Lester W. Hall* for appellants.

(1) The instrument for which the defendants gave their check, was an option contract and was absolutely void. Revised Statutes 1899, sec. 2337; Revised Statutes 1899, sec. 2342; Connor v. Black, 119 Mo. 126; Schreiver, Flock & Co. v. Isaac Orr, Admr., 55 Mo. App. 406; Mulford v. Caesar, 53 Mo. App. 263; Crawford v. Spencer, 92 Mo. 498; Hill v. Johnson, 38 Mo. App. 383; Scott v. Brown, 54 Mo. App. 606; Williams v. Tiedeman, 6 Mo. App. 269; Kent v. Witenberger, 13 Mo. App. 503; Ream v. Hamilton, 15 Mo. App. 577; McLean v. Stuve, 15 Mo. App. 317; Van Blarcon v. Donovan, 16 Mo. App. 535; Johnson v. Kaume, 21 Mo. App. 22; Connor v. Heman, 44 Mo. App. 346; Pickering v. Cease, 79 Ill. 328; Pixley v. Boynton, 79 Ill. 351; Miller v. Bensley & Wagner, 20 Ill. App. 532; Brown, Graves & Co. v. Alexander, 29 Ill. App. 626; Wheeler v. McDermid, 36 Ill. App. 179; Watte v. Costello, 40 Ill. App. 307; Peace v. Rice, 142 U. S. 28; Miles v. Andrews, 40 Ill.

App. 155; Whiteside v. Hunt, 97 Ind. 191; Bank v. Packing Co., 66 Iowa 41; Billingslea v. Smith, 77 Md. 504; Mohr v. Meiser, 47 Minn. 228; Rudolph v. Winters, 7 Neb. 125; Flagg v. Baldwin, 38 N. J. Eq. 219; West v. Wright, 86 Hun 436; Pickering v. Chase, 7 Ohio 156; Flagg v. Gilpin, 7 R. I. 10; Dunn v. Bell, 85 Tenn. 581; Wall v. Schneider, 59 Wis. 197.  (2)   Therefore there was no consideration for the appellant's check and no recovery could be had thereon.  Downing v. Ringer, 7 Mo. 585; Brick v. Seal, 45 Mo. App. 475; Friend v. Porter, 50 Mo. App. 89.

*Thos. H. & Verne D. Edwards* for respondent.

"When parties are on an equal footing, the law will presume that a man will take care of himself.  He can not go about without care or judgment relying on the law to guide and protect him in his dealings with his fellowmen  .  .  .  and the courts are not required to protect men—grown men—from their own folly and cupidity."  Harrison v. Waldron, 89 Mo. App. 164.

SMITH, P. J.—This is an action which was brought before a justice of the peace to recover the amount of a check for $225.00 given by the defendant to plaintiff on which payment had been stopped.  The check had been given in payment for the following written instrument:

"Kansas City, Mo., Jan. 4, 1902.
"I have this day sold to Theodore Nathan for account of C. N. Purcell ten (10) Puts, K. C. May wheat (75c.) seventy-five cents.  Good until close of market, May 31st, 1902.

"G. L. BRINKMAN.

"It is understood that unless the original buyer of this privilege is a member of the Kansas City Board of Trade that trades against it in the Kansas City market shall be made through the undersigned.

"THEODORE NATHAN, Put and Call Broker."

On the back of this is the following:
"C. N. Purcell, without recourse."

Shortly after the Logan Grain Company had given its check in payment for the above instrument, Mr. Logan, the president of the company, discovered that Mr. Brinkman, who had signed the "put" contract was dangerously ill and was not represented on the Board of Trade and that this instrument was therefore entirely valueless. Mr. Logan saw Mr. Lane and told him that he had learned that the "put" contract which he had bought was entirely worthless and demanded the return of his check, and offered to give up the "put" contract. Mr. Lane refused to give up the check. Mr. Logan then called up the City National Bank by telephone and stopped payment on the check.

There was a trial in the circuit court where plaintiff had judgment and defendants appealed. At the conclusion of the evidence the defendants interposed a demurrer thereto which was by the court denied and so the appeal brings before us the question whether or not on the evidence the plaintiff was entitled to go to the jury.

Section 2337, Revised Statutes, provided that "All purchases and sales or pretended purchases and sales or *contracts* and *agreements* for the purchase and sale of . . . *grain,* either on margin or otherwise, without any intention of receiving and paying for the property so bought or sold and all buying or selling or pretended buying or selling of such property on margins or optional delivery, when the party selling the same or offering to sell the same does not intend to have the full amount of the property on hand or under his control to deliver upon such sale or when the party buying any of such property or offering to buy the same does not intend actually to receive the full amount of the same if purchased, are hereby declared to be gambling and unlawful and the same are hereby prohibited.

Section 2342, Revised Statutes, declares that "all contracts made in violation of sections 2337, 2338, 2339 and 2341 of this article shall be considered gambling contracts and shall be void."

This statute does not interdict the sale of any kind of personal property for future delivery which the seller may not at the time of the sale have on hand, if he intends to deliver it and has it on hand for that purpose at the time it is to be delivered under the contract of sale, but it expressly declares that the sale of any of the kinds of personal property therein mentioned without any intention of delivering it; and all buying or selling or pretended buying or selling of such property on margins or optional delivery, when the party selling the same does not intend to have the full amount of the property on hand or under his control to deliver upon such sale, to be gambling, unlawful and prohibited. Connor v. Black, 119 Mo. 126. It has been many times held in this State that in contracts for the sale of commodities in the future there must be an actual intention to deliver or receive the commodity and not an intention simply to settle the differences according to the fluctuations in the market prices of such commodity. Kent v. Wilenberger, 131 Mo. App. 503; Williams v. Tiedeman, 6 Mo. App. 269; Ream v. Hamilton, 15 Mo. App. 577; McLean v. Stuve, 15 Mo. App. 317; Van Blarcom v. Donovan, 16 Mo. App. 535; Johnson v. Kaune, 21 Mo. App. 22. And the true test as to whether a contract which contemplates a future dealing is valid or not is whether there be an intention to actually deliver or receive the commodity at some future time or whether the intention is to settle the difference according to the fluctuations in the market price. If there be an intention to deliver or receive the commodity the contract is valid; if there be no such intention it is not. This seems to be the generally recognized doctrine. Crawford v. Spencer, 92 Mo. 498; Scott v. Brown, 54 Mo. App. 606; Pearce v. Rice, 142 U. S. 28; Miles v. An-

drews, 40 Ill. App. 155; Whiteside v. Hunt, 97 Ind. 191; First Nat'l Bank v. Oskaloosa Packing Co., 66 Iowa 41; Billingslea v. Smith, 77 Ind. 504; Mohr v. Meiser, 47 Minn. 228; Rudolph v. Winters, 7 Neb. 125; Flagg v. Baldwin, 38 N. J. Eq. 219; West v. Wright, 86 Hun 436; Pickering v. Chase, 7 Ohio Dec. 156; Flagg v. Gilpin, 7 R. I. 10; Dunn v. Bell, 85 Tenn. 581; Wall v. Schneider, 59 Wis. 197.

And as to whether or not it was the intent of a party to the contract that there should be no delivery of the commodity may be inferred from all the attending facts and circumstances disclosed by the evidence. Schreiner v. Flack, 55 Mo. App. 407.

The contract, here in issue, is that Brinkman sold to Purcell "ten puts K. C. May wheat, seventy-five cents. Good until close of Market May 31, 1902." A number of witnesses who for several years had been engaged in the transaction of grain business on the Kansas City Board of Trade were called and testified in substance that the contract here was that where the seller of it thereby sold the privilege of having wheat "put" to him at the price and within the time therein specified; that it gave the holder of it the option of selling to the seller of such contract, ten thousand bushels of May wheat at seventy-five cents a bushel; that if the market went one way the holder of the contract would exercise his option and if it went the other way he would not; that the contract was a "privilege" contract giving the holder the right to "put" wheat at a certain price within a specified time; that such contracts do not contemplate the actual delivery of the commodity but does contemplate settlements based on the differences between the market and contract prices. It appears from the evidence that it is the common understanding amongst grain dealers on the Board of Trade that "put" and "call" contracts do not contemplate the actual receipt and delivery of grain but rather speculative transactions, the settlement of

which are to be determined by the differences arising from the fluctuation of the market price.

A statute of Illinois in scope very much as that quoted at the outset was held "not intended to prohibit the purchase or sale of grain with an option given to the purchaser to deliver or to the seller to receive within a time limited in the future but the option prohibited is defined in Pixley v. Boynton, 79 Ill. 351, to be 'put' or calls—a put is a privilege to deliver or not deliver grain or other commodity." Miller v. Bensley, 20 Ill. App. 1. c. 530. It is clear that the contract here in issue was a "put" contract by the terms of which the seller sold to the buyer the privilege of selling to him, the seller, wheat at seventy-five cents a bushel within a specified time. It is manifest that this contract when read in the light of surrounding facts and circumstances did not require or contemplate a delivery of the grain sold. It was optionary with the holder of such contract whether he deliver it or not. There could be no intention to deliver when there is an option of this sort. The latter negates the former.

The purchaser of the "put" contract thereby secured the option to sell or not to sell the wheat at the price named within the time specified. If the price of wheat on the market during the specified period fell below seventy-five cents the purchaser or his assignee had the option to sell to him at the "put" contract price and receive from him the difference between the former and the latter. If the price of wheat during that period should not go below seventy-five cents then the holder of such contract would not sell and the seller of the contract would thereby be ahead in the deal thirty-five dollars received for taking the risk assumed by selling such contract. The evidence is overwhelming to the effect that the real object of the sale of the "put" contract or the privilege it granted was not to contract for the actual *delivery* in the future of the wheat but merely to speculate upon the rise and fall in prices and that it was

understood by them at the time that the wheat to which the contract related was not to be delivered and that the transaction contemplated was to be closed only by the payment of the difference between the contract price and the market price at the time fixed for the execution of the contract. The transaction, from its inception, contemplated nothing more nor less than a gambling in differences and it was therefore a stench in the nostrils of the statute. Such a contract was void—it is nothing. It bound no one and was incapable of enforcements and it therefore follows that by its delivery to the defendants no legal consideration for the check passed to them. Friend v. Porter, 50 Mo. App. 89; Bick v. Seal, 45 Mo. App. 475. In no view of the case which we are able to take do we see that the plaintiff is entitled to recover. We feel justified from the almost undisputed evidence in holding as a matter of law that the plaintiff is not so entitled.

The defendant's instruction in the nature of a demurrer to the evidence should have been given.

The judgment must accordingly be reversed. All concur.