ELMORE-SCHULTZ GRAIN COMPANY, Respondent,
v. E. O. STONEBRAKER, Appellant.

**St. Louis Court of Appeals. Opinion Filed July 1, 1919.**

1. **ACCOUNT STATED: Pleading: Evidence.** In an action on an account stated, *held* that the evidence sufficed to warrant a finding that there had been an account stated between the parties, as alleged in the petition.

2. ———: ———: **Answer: Defenses: Illegal Transaction.** An account stated presupposes that the transactions upon which it is based were not illegal; consequently the defense set up by the answer, that the transactions out of which plaintiff's account arose were illegal and void, was available to defendant.

3. **GAMBLING: Gambling Transactions: Brokers: Commissions: Agency.** A broker cannot recover commissions or advancements on account of transactions handled for defendant, as defendant's agent, if those transactions were illegal.

4. ———: ———: **Dealing in Futures: Contracts: Common Law Rule.** At common law, the buying and selling, or pretended buying or selling, of grain or other commodities, ostensibly for future delivery, were not illegal, as gambling transactions, unless both parties thereto intended that they should not be bona-fide transactions but mere speculations in the rise and fall of the market.

5. ———: ———: ———: ———: **Statute: Instructions.** Under sections 4780 and 4781, Revised Statutes 1909, the common law rule has been changed, and the intent of either one of the parties to the transaction to gamble in such transaction, or to speculate on the rise or fall of the market, is sufficient to and does render the contract absolutely void, notwithstanding the other party may be ever so innocent and wholly unaware of the intention to gamble entertained by the other; consequently in an action on an account stated, growing out of such transaction, it is error to instruct the jury that it is not enough to render the contract void that one part only intended by it a speculation in prices, but that it must be shown that both parties at the time of making the contract did not intend to deliver the goods, but contemplated and intended merely a settlement of differences in prices before the contract is, under the law, illegal and void.

6. ———: ———: ———: ———: **No Extraterritorial Effect.** The Missouri statutes relating to gambling transactions have no extraterritorial effect.

6—Mo. App.

7. ———: ———: **Contracts: Option Contracts: Puts and Calls: Statute: Construction.** Under section 4780, Revised Statutes 1909, which denounces as gambling and void, all purchases and sales or pretended purchases and sales, or contracts and agreements for the purchase and sale, etc., the word "for" may be taken as equivalent to the words "with respect to;" the object and purpose of the statute being to suppress the evil of gambling on the stock and grain markets and "puts" and "calls" or "options" fall within the act and are invalid.

ON MOTION FOR REHEARING.

8. **ACCOUNT STATED: Not Conclusive: May be Impeached.** An account stated, though presumptively a binding obligation on the part of the debtor, into which the prior transactions involved are merged, is not absolutely conclusive, but the settlement thereby evidenced may be impeached for fraud, accident, or mistake inhering therein; but such grounds for impeachment of an account stated must relate to the settlement itself, or the account stated, and not to matters of anterior liabiliy, except in so far as evidence touching the latter may constitute a foundation for the introduction of evidence to substantiate such defense.

9. ———: ———: **New Promise: Items Tainted with Illegality: Cannot Recover.** Where the suit is upon an account stated, the right of action is predicated upon the new promise of the debtor to pay the balance alleged to have been agreed upon as being due upon a settlement between the parties; and where the account stated is based in part upon transactions which are illegal and void, and this is shown in defense to the action thereon, the consideration for the debtor's express or implied promise to pay the balance alleged to be due is then tainted with illegality, preventing a recovery in such action.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Rhodes E. Cave*, Judge.

REVERSED AND REMANDED.

*Arthur L. Oliver* for appellant.

(1) Section 4780, R. S. 1907, of our statute and the following section (4781) have been several times construed by our courts, and notwithstanding the decision of this court in the case of Taylor v. Sebastian, 158 M. A. 147 this and other courts have held in the main that if, under the guise of a contract of sale, the real intent of

both parties is merely to speculate in the rise or fall of prices, and the property is not to be delivered, but, at the time fixed for delivery, one party is to pay to the other the difference between the contract price and the market price, the whole transaction is a wager and invalid. Connor v. Black, 119 Mo. 126; Crawford v. Spencer, 92 Mo. 498; Cockrell v. Thompson, 85 Mo. 510; Scott v. Brown, 54 Mo. App. 606; Hill v. Johnson, 38 Mo. App. 383; Buckingham v. Fitch, 18 Mo. App. 91; Van Blarcom v. Donovan, 16 Mo. App. 535; Ream v Hamilton, 15 Mo. App. 577; Williams v. Tiedemann, 6 Mo. App. 269; Atwater v. Brokerage Company, 147 Mo. App. 436; State v. Gritzner, 134 Mo. 512. (2) In the absence of some constitutional or statutory provision to the contrary, a contract for the sale of stocks or other commodity to be delivered at a future day is valid, even though the seller has not goods and had no other means of getting them to go into the market and buy them before the day of delivery, provided that the parties really intend that the goods are to be delivered by the seller and that the price is to be paid by the buyer. Lane v. Logan Grain Company, 105 Mo. App. 215; Dierling v. Sloop, 67 Mo. App. 446; Jones v. Shale, 34 Mo. App. 302. In this connection the courts of our State have held that a sale of "puts" is within the denunciatory provisions of section 4780. Lane v. Logan Grain Company, supra. (3) If an unlawful intent is entertained by only one of the parties, the transaction is not illegal, in the absence of a statute to the contrary. But our statute provides that "when the party selling the same or offering to sell the same, does not intend to have the full amount of the property on hand or under his control to deliver upon such sale, or when the party buying any of such property or offering to buy the same does not intend actually to receive the full amount of the same if purchased, are hereby declared to be gambling and unlawful and the same are hereby prohibited," and our courts have held that such contracts as are in evidence in this case, are in violation

of our statutory law. Edwards Brokerage Company v. Stevenson, 160 Mo. 516; Gaylord v. Duryea, 95 Mo. App. 574; Taylor v. Penquite, 35 Mo. App. 389; Jones v. Shale, supra; Williams v. Tiedemann, supra. (4) The true test of the validity of a contract for future delivery is whether it could be settled only in money and in no other way, or whether the party selling could tender and compel the acceptance of the particular commodity sold or the party buying could compel the delivery o fthe commodity purchased. The mere form of the transaction is of but little consequence, if any; otherwise statutes against wagers could always be evaded; the essential inquiry in this, as in every case, is as to the necessary effect of the contract and the real intention of the parties. (5) As above stated, the variance in the pleading which was permitted by amendment as well as the variance in the pleading and proof, prevents the plaintiff in this case from recovering any amount whatsoever. Taylor v. Sebastian, supra. (6) Instruction "A" given by the court upon its own motion, and declaring that before the transactions in question could be treated as void and violative of the above statute, is clearly erroneous and misleading, in requiring the jury to find that both parties at the time of the making of the contract did not contemplate delivery. The language of the statute is in the disjunctive, and where either the party selling "or" the party buying did not intend actual delivery, the contract is void. (7) The instructions considered as a whole are so clearly misleading, contradictory and erroneous that a careful reading of them, without discussion, is all that is required to detect the glaring errors which were committed.

*Jesse W. Barrett* for respondent.

(1) There is no such thing in law as a "variance" between an amended petition and an original petition.

Revised Statutes 1909. (2) The evidence both of plaintiff and of defendant proves all the elements of an account stated. (3) Contracts on the Chicago Board of Trade are not governed by sections 4780, 4781 and 4785 of the Missouri statutes. (4) Puts and calls are not within sections 4780, 4781 and 4785 of the Missouri statutes. Taylor v. Sebastian, 158 Mo. App. 147; State National Bank v. Anderson, 198 S. W. 511. (5) The transactions in question being made up in major part of Chicago transactions, and also being made up in part of puts and calls, and the proportions being undetermined, the account was properly held to be governed by the common law rather than by sections 4780, 4781 and 4785 of the Missouri statutes. Taylor v. Sebastian, supra. (6) There is abundant proof that respondent intended delivery in every transaction, and there is no evidence contra. (7) The evidence would have justified a finding that appellant also intended delivery.

ALLEN, J.—This is an action whereby plaintiff corporation seeks to recover from the defendant the sum of $1783.45 upon an account stated. The petition, as amended by interlineation, avers that plaintiff is an Illinois corporation, authorized to transact business in Missouri, and engaged in the business of buying and selling grain on commission, with its principal office in the city of St. Louis; that for a long time prior to June 12, 1912, plaintiff and defendant had mutual dealings with each other, and that plaintiff on defendant's orders bought and sold for defendant grain of all kinds, and paid out and expended divers sums of money for defendant at his instance and request; that on or about June 12, 1915, an account was stated between plaintiff and defendant whereby it was agreed between them that there was due to plaintiff from defendant a balance of $1783.45, which balance defendant promised to pay plaintiff. Averring no part thereof had been paid, judgment is prayed accordingly.

The answer first denies generally the allegations of the petition except the averment that defendant had certain dealings with plaintiff corporation; specifically denying, however, that defendant owes plaintiff any sum by reason thereof. The answer further denies that there was an account stated between the parties, or that defendant ever promised to pay plaintiff the amount mentioned in the petition or any part thereof, denies that plaintiff expended divers sums of money for defendant, at his instance and request, as alleged in the petition, and avers that if any money was paid out or expended by plaintiff for defendant it was without his knowledge or consent, authority or request, "upon wagering and gambling transactions known in the commercial world as 'deals in options;'" that whatever dealings and transactions defendant had with plaintiff, at the times mentioned in the petition, consisted of pretended sales and purchases of grain, etc. for future delivery, when neither plaintiff nor defendant expected or intended defendant to deliver or to have delivered to him any such commodities, and that none were ever delivered by or to defendant in the course of his said dealings with plaintiff, and that plaintiff's claim herein is based wholly upon said pretended dealings and wagers which were illegal and void and in violation of the statutes of this State; that if the whole or any part of the sum mentioned in the petition was paid out or expended by plaintiff, it was upon forfeitures termed "margins on futures," which were illegal and void. And it is averred that at the time of defendant's dealings with plaintiff, plaintiff's officers in charge of its affairs knew that defendant did not have any grain, etc., on hand and did not expect to have or deliver or receive any of the same, in the dealings aforesaid, but knew that such dealings were "simply for the margin, on the rise and fall of prices" and that they were not made in good faith by plaintiff or defendant but were illegal transactions.

The reply puts in issue the new matters in the answer.

The trial, before the court and a jury, resulted in a verdict and judgment in plaintiff's favor for the said sum of $1783.45 with interest from the date of the institution of the suit.

The evidence shows that plaintiff is a foreign corporation doing a "grain and commission" business in this State with its only business office in the city of St. Louis. And the evidence in plaintiff's behalf is to the effect that during the period mentioned in the petition the defendant had many transactions with plaintiff, the later acting as defendant's agent in executing various orders for defendant in the Chicago and St. Louis grain markets; that a statement as to each such transactions was given to defendant by plaintiff, usually upon the day following the same; that when defendant ceased doing business with plaintiff the latter mailed to him a statement of the amount of money claimed to be due from him to plaintiff, which defendant retained for several months without questioning the correctness thereof; that thereafter plaintiff's vice-president and manager, one Trave Elmore, met defendant at a hotel in the city of St. Louis and spoke to him in regard to the account, and that defendant did not question the correctness thereof, but, on the contrary, said that he owed the money and would pay it.

On cross-examination, Trave Elmore, plaintiff's only witness in chief, testified that plaintiff simply filled orders for defendant for the purchase or sale of grains; that it was defendant's custom to come to plaintiff's office and by means of "memorandum slips" direct plaintiff to purchase or sell for him grain for future delivery, and that plaintiff carried out these transactions. The witness testified that in purchasing grain plaintiff did not buy the grain itself for defendant, "but bought contracts," and that in each instance delivery was contemplated. When asked if any grain was ever delivered to defendant in these transactions,

the witness answered in the affirmative; when asked when any delivery took place, he said that he did not know the date—that the books would show.

Certain daily statements given by plaintiff to defendant touching these transactions were introduced in evidence. They purported to show that defendant had bought or sold grain through plaintiff for future delivery, or had purchased "offers." When asked by the court what was meant by the term "offer" the witness said that it was "on the same principle" as a "call," saying: "Chicago calls them 'offers,' we call them 'calls;'" that this means that "you have the privilege at the end of so many days to buy"—referring to it as an "option;" that if the holder "exercises his privilege then he gets a contract for wheat."

For defendant, one Harry G. Bailey, who was formerly plaintiff's cashier, testified as to defendant's dealings with plaintiff. He stated that defendant "would buy options for the different months, buy and sell them both in Chicago and in St. Louis;" that defendant "traded in everything—in puts and calls, bids and offers, and options;" that "options are future contracts for delivery;" that as to defendant's transactions he did not know whether "any delivery of a contract was contemplated or not;" that he had no conversation with defendant regarding the matter and did not know what defendant contemplated, or what was "the company's contemplation." Referring to one transaction shown in evidence he said that in that instance "the contract was taken up" but the deal was "closed out" before delivery month arrived. He further testified that he did not know of any actual deliveries of grain to defendant in the course of these transactions; that he "never made any purchase other than an option or a put and a call deal."

Defendant testified, in effect, that his transactions with plaintiff were purely for the purpose of speculating on the grain market; that he advanced to plaintiff a certain margin on his deals, usually buying options, and

that as the market fluctuated he would close out his deals and receive his profit or accept his loss. He testified that he was a traveling salesman, had no grain to sell, never owned any grain in his life, and never expected to deliver or to receive any grain in any of his deals; that at no time did he pay anything for the pretended or actual value of the grain itself, but merely put up margins in order to enable him to thus speculate. He testified that his dealings were both in the Chicago and St. Louis markets, the greater part thereof being in the former; and that all of his dealings were on his individual account, "with the idea of making a little money by gambling in grain." From his testimony it appears that he had received statements sent him by plaintiff, and that he had estimated that plaintiff's claim against him was about $2000; that he did not promise to pay plaintiff, but refused to settle the account because he was dissatisfied with the manner in which plaintiff "closed out" his last deal.

One Watson, manager of the St. Louis Grain Clearing Company, said to be the "clearing house" of the Merchants Exchange in the city of St. Louis, called as a witness for plaintiff in rebuttal, testified that there is really no such thing as an "option" in the grain business as conducted in the St. Louis Market; that the term is sometimes used to designate a grain contract, but that "members of the Merchants Exchange define these things to be a contract for the future delivery of grain, and the only option part about it is the time of delivery;" that the seller of grain for delivery in a certain future month "may elect to deliver that grain upon the first or the last day of that month," and that this is the only option feature of the transaction. He testified that in such transactions on Merchants Exchange delivery is made of the actual grain unless the contract has been sold in the meantime.

The court gave certain instructions at plaintiff's request and certain others of its own motion, and refused all of the instructions requested by defendant.

As to the account stated the court gave an instruction which, in substance, told the jury that if they found that defendant received from plaintiff the statement of account shown in evidence, and did not object thereto within a reasonable time, then the law presumes it to be a correct statement of the account, and it devolved upon defendant to prove the contrary by the preponderance of the evidence, and that unless defendant had done so, then to find for plaintiff, unless the jury further found, under the other instructions, that the dealings between the parties were illegal.

An instruction given by the court of its own motion is as follows:

"The court instructs the jury that a sale of goods to be delivered in the future is valid even though there is an option as to the time of delivery, and, although the seller has no other means of getting the goods than to go into the market and buy them; but if the real purpose and intention of both parties at the time of making the contract is merely to speculate on the rise and fall in prices of such goods, and the goods are not to be delivered, but only differences paid between the contract and the market price, then such a contract is a wager and is void. But it is not enough to render the contract void that one party only intended by it a speculation is prices; it must be shown that both parties at the time of making the contract did not intend to deliver the goods and that both contemplated and intended a settlement of differences in prices only before the contract is under the law illegal and void."

Other instructions given proceed along the same general theory as does that set out above.

## I.

It is appellant's contention that the evidence failed to establish an account stated. But obviously the evidence sufficed to warrant a finding that there had been an account stated between the parties, as alleged in the petition; and the instruction, supra, touching this matter was a proper one. [See Piper v. St. Louis, L.

& G. Ry. Co., 200 S. W. 687; Kenneth Investment Co. v. Bank, 96 Mo. App. 125, 70 S. W. 123.]

## II.

But "an account stated presupposes that the transactions upon which it is based were not illegal." [1 R. C. L., 209; Raymond v. Leavitt, 46 Mich. 447.] Consequently the defense set up by the answer, namely, that the transactions out of which plaintiff's account arose were illegal and void, was available to defendant if supported by the facts in evidence.

Plaintiff cannot recover its commissions or advancements on account of the transactions handled by it for defendant, as defendant's agent, if those transactions were illegal. [Edwards Brokerage Co. v. Stevenson, 160 Mo. 516, 61 S. W. 617.] At common law transactions of such general character as those conducted by plaintiff for defendant, i. e., the buying and selling, or pretended buying or selling, of grain or other commodities, ostensibly for future delivery, were not illegal, as gambling transactions, unless both parties thereto intended that they should not be *bona-fide* transactions, but mere speculations in the rise and fall of the market. [Edwards Brokerage Co. v. Stevenson, supra; Connor v. Black, 119 Mo. 126, 24 S. W. 184; Atwater v. Brokerage Co., 147 Mo. App. 436, 126 S. W. 823.]

But in this State the common-law rule on the subject has been changed by statute. Sections 4780, Revised Statutes 1909, provides as follows:

"All purchases and sales or pretended purchases and sales, or contracts and agreements for the purchase and sale, of the share of stocks or bonds of any corporation, or petroleum, provisions, cotton, grain or agricultural products whatever, either on margin or otherwise, without any intention of receiving and paying for the property so bought, or of delivering the property so sold, and all the buying or selling or pretended

buying or selling of such property on margins or on optional delivery, when the party selling the same, or offering to sell the same, does not intend to have the full amount of the property on hand or under his control to deliver upon such sale, or when the party buying any of such property or offering to buy the same does not intend actually to receive the full amount of the same if purchased are hereby declared to be gambling and unlawful, and the same are hereby prohibited.''

The next succeeding section, 4781, provides that it shall not be necessary, in order to commit the offense defined by section 4780, that both the buyer and the seller shall agree to do any of the acts prohibited by that section.

In the recent case of Smith v. Bailey, 209 S. W. 945, decided by the Kansas City Court of Appeals, in considering the effect of these sections in a case such as that before us, it is said by BLAND, J.:

''Under decisions in this State construing sections 4780 and 4781, Revised Statutes 1909, the intent of either one of the parties to the buying or selling to gamble in such transaction, or to speculate on the rise or fall of the market, is sufficient to and does render the contract absolutely void, notwithstanding the other party may be ever so innocent and wholly unaware of the intention to gamble entertained by the other. [Connor v. Black, 119 Mo. 126, 24 S. W. 184; Edwards Brokerage Co. v. Stevenson, 160 Mo. 516, 61 S. W. 617; Atwater v. Brokerage Co., 147 Mo. App. 436, 126 S. W. 823.] And in order that there be a valid contract for the sale of commodities to be delivered in the future, there must be an actual intention to deliver or receive the commodity on the delivery day. An intention to simply settle the difference according to the fluctuations of the market prices of such commodity makes the transaction a gambling one. [Lane v. Grain Co., 105 Mo. App. loc. cit. 218, 79 S. W. 722, and cases therein cited.'']

"However, it was not necessary for plaintiffs to have known of defendant's intention to gamble in order that the demand sued for be not recoverable. The contracts, as we have already stated, were void, although it may have been the intention of only one of the parties to the contract to gamble. It is held that such contracts are void in the hands of a person who is a party to them, even though he acted in ignorance of the fact that the delivery of the commodity purchased or sold was not intended. [Stewart v. Hutchinson, 120 Mo. App. loc. cit. 37, 96 S. W. 253; Connor v. Black, supra; Edwards v. Stevenson Brokerage Co., supra; Atwater v. Brokerage Co., supra, 147 Mo. App. loc. Cit. 445, 126 S. W. 823.] This being the policy of the law, it is apparent that the agent or broker conducting the operations, even though entirely innocent of any knowledge that they were unlawful, is precluded as well from his right to recover by the unlawful intention of his principal. The contract which he has negotiated through his principal is absolutely void, and no enforceable rights may accrue to any one thereunder, and he is not entitled to recover his commission. [Stewart v. Hutchinson, supra; Connor v. Black, supra; Edwards v. Stevenson Brokerage Co., supra; Atwater v. Brokerage Co., supra, 147 Mo. App. loc. cit. 445, 126 S. W. 823.] This ruling is not based upon any contention that the statute by its terms includes brokers; that is to say, that it provides expressly that a broker may not recover when it is the intention of his principal to gamble, but on the broad ground that the statute makes the contract which the broker negotiated void, and being void, no enforceable rights may accrue thereunder. [See Woolfolk v. Duncan, 80 Mo. App. loc. cit. 427.]"

It is unnecessary for us to review at length the authorities cited in the case from which we have just quoted; they will be found to sustain the doctrine there announced, however harsh the operation of the statute may appear. In Connor v. Black, supra, l. c. 141, following a decision of the Supreme Court of Tennessee under

a similar statute, it is said that, "the act was intended to make it unlawful if either of the parties had no intention of effectuating a real purchase or sale; that the purpose and object of the statute was to suppress the evil of dealing in futures, and limit such operations to sales made in good faith, by those who wished to sell and buy; and that in making the seller responsible for the intent of the buyer and the buyer responsible for the intent of the seller, its intention and purpose was to suppress gambling by confining the business of buying and selling for future delivery to such limits as would effectually preclude the possibility of it."

In the instant case the evidence is, of course, abundant from which a jury may find that the defendant was merely speculating or gambling on the rise and fall of the grain market. And, as was said to be the case in Smith v. Bailey, supra, the facts and circumstances are such as to warrant a jury in finding that plaintiff knew that the defendant was so speculating, though it appears to be unnecessary that the jury so find in order that defendant may defeat a recovery in the action.

It is said for respondent, however, that since the evidence showed that a great part of the dealings in question were in the Chicago market, and failed to show what portion of the account arose out of transactions conducted in this State—defendant's testimony merely showing that "most of them were in Chicago"— the court below was "compelled to treat the whole account as if made up of Illinois contracts, and since the Illinois law was neither pleaded nor proved, the common law governed, and the common-law test was correctly applied by the trial court."

It is quite true that our statute can have no extraterritorial effect; and respondent's argument that, under the circumstances, the transactions in Illinois are to be treated as governed by the common-law rule, is sound enough. [Edwards Brokerage Co. v. Stevenson, supra; Atwater v. Brokerage Co., supra.] But the argument to the effect that all of the transactions out of

which the account in suit arose must be treated as Illinois transactions, is clearly unsound. On the contrary, since it affirmatively appears that some of the transactions upon which plaintiff's account stated is based, were had within this State, and hence were within the operation of the statute, it necessarily follows that if those transactions are illegal and void under the statute, then the entire account is tainted with illegality and no recovery may be had thereon. The account stated upon which plaintiff sues is an entirety; the various items of which it is composed do not appear, and the case affords no means for distinguishing between those items which might be found valid and those which might be found invalid. Consequently, if any substantial part of the account is illegal, the whole is infected thereby, preventing a recovery thereon. [See Bick v. Seal, 45 Mo. App. 475; Parke, Davis & Co. v. Mullett, 245 Mo. 167, l. c. 173 and cases cited, 149 S. W. 461.]

It is further argued for respondent that under the decision of this court in Taylor v. Sebastian, 158 Mo. App. 147, 138 S. W. 549, "puts and calls are not within the purview of the sections named." In the Taylor case it was said that the contract there under consideration, being a call or option which gave the holder the privilege during ten days of demanding a contract for wheat—or as said by the court, being "a contract for a contract of purchase and sale of grain"—was not within the statute. What is said on this subject in the Taylor case may be regarded as mere *obiter dicta,* since, notwithstanding the view expressed as to this matter, the ruling below, forcing plaintiff to a nonsuit was affirmed on appeal upon the ground that the evidence showed a contract different from that sued upon, and hence there was a failure of proof to sustain the averments of the petition. In that view of the case, it mattered not whether the evidence did or did not tend to establish the defense of illegality set up in the answer. And we are of the opinion that what is stated in the Taylor case on this particular question is unsound, and ought not to

be followed. We think that puts and calls, or options, are within the statute, if indeed they are employed for the mere purpose of gambling on the rise and fall of the market. It is true that the statute is to be strictly construed. "But by the expression 'strict construction' is meant that the scope of the statute shall not be extended by implication beyond the literal meaning of the terms employed, and not that the language of the terms shall be unreasonably interpreted. Courts ought neither enlarge nor narrow the true meaning of penal statutes by construction, but should give effect to the plain meaning of words, and where they are doubtful should adopt the sense in harmony with the context and obvious purpose and object of the enactment." [Moore v. Telegraph Co., 164 Mo. App. 165, l. c. 171, 172, 148 S. W. 157.]

Section 4780, supra, denounces as gambling and void "all purchases and sales, or pretended purchases and sales, or contracts and agreements for the purchase and sale of . . . grain . . . either on margin or otherwise," without the intention of receiving or delivering the property, etc. In construing and applying the expression "contracts for the purchase and sale," the word "for" may properly be taken in as equivalent to the words "with respect to"—a sense in which it is frequently used. [See 3 Words & Phrases, 2861.] In other words the statute may be regarded as striking not only at purchases and sales or pretended purchases and sales, but agreements with respect to the purchase and sale of commodities, with no intent to receive or deliver the same but with the intent merely to speculate on the rise and fall of the market. The language of the Statute, when taken as a whole, is entirely consonant with this view. And it is quite obvious that when the statute is construed with respect to the object and purpose of its enactment, namely, to suppress the evil of gambling on the stock and grain markets, the construction suggested is the natural one; and "puts" and "calls," or "options," fall within the

act. [See Lane v. Logan Grain Co., 105 Mo. App. 215, 79 S. W. 722.] Indeed such transactions are said to be merely methods adopted for speculating in the differences in the market value of grain or other commodities (Minnesota Lbr. Co. v. Coal Co., 160 Ill. 85, 1. c. 97); the very thing which the statute seeks to suppress.

In this view it is immaterial whether defendant, in any of his deals did or did not receive the formal contract which, it is said, he had the option to demand, if in point of fact he had throughout no intention of ultimately receiving or delivering any grain thereunder, but his object was merely to speculate. And the evidence shows that while defendant had numerous transactions on the grain market, conducted by plaintiff in his behalf, it does not appear in a single instance he ever received or delivered any grain in any of his dealings.

From the testimony of the witness Watson, supra, it is obvious that defendant was using a process by means of which he could have conducted his trades lawfully; but the evidence in his behalf goes to show that in point of fact he was simply making use thereof in order to gamble on the rise and fall of the market. [See Smith v. Bailey, supra.]

It follows that the instructions as to the defense of illegality did not properly submit the case to the jury. The judgment should therefore be reversed and the cause remanded for further proceedings consistent with the views expressed above. It is so ordered.

*Reynolds, P. J.,* and *Becker, J.,* concur.

## ON MOTION FOR REHEARING.

ALLEN, J.—Respondent's learned counsel has filed a motion for a rehearing, which challenges our holding that if the account stated is based in part upon illegal transactions then the whole is tainted with illegality and no recovery may be had thereon. But after

7—Mo. App.

a careful consideration of the motion we are constrained to adhere to the conclusion reached in the opinion touching this matter.

It is argued for respondent that the rule is that where it is shown in defense to an action upon an account stated, that fraud, accident or mistake entered into the settlement, the account may be corrected and a recovery had by the plaintiff upon the balance thus found due; and that this is likewise true as to illegality affecting only certain items going to make up the account stated, the burden being upon defendant to show the illegality of the particular transactions thus drawn in question.

It is well settled that an account stated, though presumptively a binding obligation on the part of the debtor, into which the prior transactions involved are merged, is not absolutely conclusive, but the settlement thereby evidenced may be impeached for fraud, accident or mistake inhering therein. [See Barr v. Lake, 147 Mo. App. 252, 126 S. W. 755, cases cited.] But such grounds for impeachment of an account stated must relate to the settlement itself, or the account stated, and not to matters of anterior liability, except in so far as evidence touching the latter may constitute a foundation for the introduction of evidence to substantiate such defense. [1 Corpus Juris., p. 711, sec. 337; 1 Cyc. 456; Koegel v. Gibbons, 79 Mo. 77.] As to correcting the account stated, under such circumstances, for errors or omissions in the settlement, and allowing a recovery upon the account as corrected, it is said that "in the absence of allegation and proof of fraud or mistake which taints the entire account, the court, will not open and unravel it as if no accounting had been made, but the settlement will be binding except for the errors shown. When, however, the fraud or mistake taints the entire transaction, the court will direct the whole account to be opened and taken *de novo,* and the relief will not be limited to the right to surcharge and falsify." [1 Corpus Juris., p. 721, sec. 373.]

But where the account stated is based in part upon transactions which are illegal and void, and this is shown in defense to the action thereon, we regard it as clear that the consideration for the debtor's express or implied promise to pay the balance appearing to be due is then tainted with illegality, preventing a recovery in such action. We do not think that under such circumstances the taint or illegality may be removed by correcting the account stated, reducing it by the amount shown to be based upon such illegal transaction. Where the action is upon an open account such course may be pursued, i. e., illegal items may be eliminated and recovery had upon the remainder of the account. But, as said, when the suit is upon an account stated, the right of action is predicated upon the new promise of the debtor to pay the balance alleged to have been agreed upon as being due upon a settlement between the parties (Barr v. Lake, supra), and if the consideration therefor is tainted with illegality the situation is the same, so far as concerns this question, as it is where a debtor gives his note for a prior indebtedness comprised in part of illegal items. [Bick v. Seal, 45 Mo. App. 475.]

In 1 Corpus Juris., p. 701, sec. 311, it is said:

"Since the statement of accounts must rest upon a subsisting indebtedness, it follows that a claim which is void by reason of illegality will not support an account stated, as where the account stated is with regard to claims founded on the illegal sale of liquors, or where it includes usurious interest; and the alleged debtor is not estopped from showing illegality in particular items of an account stated or by reason of his having retained the account rendered without objection. So an action upon a stated account will fall if one of several claims of indefinite amount included in it must be omitted for illegality."

And the rule is similarly stated in 1 Cyc., p. 458.

In Nash-Wright Company v. Wright, 156 Ill. App. 243, l. c. 265, 266, it is said:

"Appellee contends that as this case was tried solely on the count declaring on the account stated and the count on the note, there can be no recovery if any part of the transactions which make up the account and form the consideration for the note is illegal. We are of the opinion that there is no difference in this respect between an account stated and a promissory note, each embracing numerous transactions. In each, the former transactions are merged in the new obligation. [Throop v. Sherwood, 4 Gilm, 92, 98.] In each, the action is based, not on the original transactions but on the new promise. That this is express in the case of a note and may be only implied in the case of the account stated, seems to us to be immaterial. Our Supreme Court has expressly held that at common law there can be no recovery on a note or on any other promise any part of the consideration for which is illegal. [Deothart v. Congdon, 197 Ill. 345; First Nat'l. Bk. v. Miller, 235 Ill. 135; Ramsay v. Whitbeck, 183 Ill. 550.] That this same principle prevails as to the implied promise arising out of an account stated is held in Kennedy v. Broun, 13 C. B., n. s. 677, at 741.

"The case might have been tried on the other common counts and proof made of each transaction that entered into the account. If that had been done, a recovery for so much of the indebtedness, if any, as might be found to be legal, would have been justified. But plaintiff's case was rested on proof of the delivery of the statement of the balance due and defendant's failure to object thereto—proof only of an account stated."

Respondent's learned counsel challenges the correctness of the decision in the case from which we have just quoted, asserting that it is not supported by the ruling in Kennedy v. Broun, cited therein. In the last mentioned case it is simply held that in an action upon an account stated, "If any one of the claims of undefined amount is to be omitted, the statement of the account is disproved, and the account founded upon such statement of account fails." But the ruling in Nash-Wright

Co. v. Wright, supra, appears to us to be sound upon principle and in keeping with the established rule of decision in this State as reflected in Bick v. Seal, supra, and in Parke, Davis & Co. v. Mullett, 245 Mo. 167, 1. c. 173, 149 S. W. 461, and the cases there cited and followed.

It will be noted that as to the effect of the taint of illegality, the language of the opinion in the Nash-Wright case, quoted above, makes no distinction between a definite and an indefinite portion of an account stated which is thus affected. Whether such distinction is important is not of consequence upon the record now before us. In the instant case there is evidence tending to show that an indefinite and unascertained portion of the balance shown by the account stated originally arose out of transactions illegal under our statute. While the burden was upon the defendant to prove that illegality inhered in the transactions upon which the account stated was based in whole or in part, we do not think that he was required to show the amount thereby affected and that if he failed in this plaintiff was entitled to recover the whole, as is contended by plaintiff. Upon the contrary we are of the opinion that the evidence for the defendant sufficed to make out a prima-facie defense as to plaintiff's entire cause of action on the account stated.

In this view there should be no such difficulty in instructing the jury upon a retrial as respondent seems to fear. Taking the case made by this record, it appears without dispute that the transactions out of which the account stated arose were had partly in this State and partly outside of the State; and the evidence for defendant tends to show that he intended no delivery of grain by or to him in any of the transactions, whether had within or without the State, but intended merely to gamble on the rise and fall of the market. If the jury find that such was defendant's intention, then it follows that the account stated is tainted with illegality and plaintiff cannot recover. And if evidence not present in this record be adduced on a new trial, we perceive

no reason why the case may not be intelligently submitted to the jury, for its finding upon the facts, in keeping with the views expressed in our opinions herein.

With the concurrence of the other judges the motion for a rehearing is overruled.